451 So.2d 1211 (1984)
Carol DUCOTE
v.
LIBERTY MUTUAL INSURANCE COMPANY.
No. CA-0551.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 1984.
*1212 Jerald N. Andry and Gilbert V. Andry, III, New Orleans, for plaintiff-appellant.
Kent Breard, Sr., Snellings, Breard, Sartor, Inabnett & Trascher, Monroe, for defendant-appellee.
Before REDMANN, GULOTTA and AUGUSTINE, JJ.
AUGUSTINE, Judge.
Elton Ducote was electrocuted on May 4, 1977 while using a portable electric tool known as a "Skilsaw". His widow filed this action for wrongful death against several defendants,[1] including the manufacturer of the saw, the Skil Corporation. As to this defendant, Mrs. Ducote alleged that her husband's death was caused by the saw's defects in manufacture and design, and by Skil Corporation's failure to adequately warn of the hazards which accompany the normal use of portable electric tools. Following lengthy trial of these issues, the lower court entered judgment for the defendant, finding no fault on the part of Skilsaw. The plaintiff now brings this appeal.
At trial, Skil Corporation irrefutably proved that the decedent's saw was defective neither in manufacture nor in design, and the plaintiff concedes as much here. Her sole contention now is that the warnings published by Skil in the user's instruction manual were inadequate to alert her husband to the risk of electrocution if the saw were used without proper grounding.
The facts of this case are, for the most part, not in dispute:
Elton Ducote was an experienced twenty one year old carpenter. He was killed on May 4, 1977 while working at a construction site in New Orleans East, where a row of new houses was being built. Although the immediate cause of his death was electrical shock, this was, in turn, the result of an unusual combination of events.
Ducote arrived at work before 7:00 a.m. on the day of the accident. Despite the puddles and wet mud from the rain of the night before, he set up an outdoor workplace in front of the third house in the row. Since very few of the other carpenters, plumbers, or electricians had arrived, Ducote did not, as yet, have to compete with them for the electricity which was supplied by the temporary service pole located between the second and third houses. The pole had only two 120-volt receptacles, one above the other. Ducote plugged his Skilsaw's long extension into the bottom outlet and began to work, sawing the fascia and soffits which were to be used in the construction of the second house.
After working for a number of hours, Ducote set his saw down on the unfinished boards and walked to the workers' "chuck wagon" for a cup of coffee. Other men had arrived at the site by this time, some of whom would need electricity from the temporary pole to power their own tools. One of the plumbers working in the second house went to the pole to connect his drill and, apparently seeing that both receptacles were occupied, he unplugged Ducote's extension. In its place, he inserted a short extension with a four-outlet junction box attached to the other end. The plumber then plugged both his own cord and Ducote's *1213 into the box and returned to work inside the second house.
When Ducote returned from his coffee break, he picked up his saw by its metal casing and suffered immediate electrocution. A police investigation into the cause of the mishap revealed that the cord which the plumber had used to replace connect the junction box to the power pole was dangerously defective: although it was a three-wire cord, someone had attached a two-prong plug to the end of it, leaving the third wirethe ground wire exposed by almost four inches. When the plumber plugged this cord into the pole, the ground wire made contact with the plug's "hot" prong, thus transmitting ungrounded electricity through the ground wire to the junction box, then to decedent's Skilsaw and, ultimately, into Ducote himself.
Concerning the legal principles applicable to this case, Louisiana's law of products liability interprets La.C.C. arts. 2315 and 2545[2] as, together, imposing an affirmative duty upon a manufacturer to warn the consumer of any dangerous propensities which may foreseeably accompany normal use of the product. Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978). Such warnings, to be adequate, must be expressed with an intensity that is proportionate to the risk. Tampa Drug Co. v. Wait, 103 So.2d 603 (Fla.1958); Hubbard Hall Chem. Co. v. Silverman, 340 So.2d 402 (1st Cir.1965); see also, W. Kimble & R. Lescher, Products Liability, § 198, at 209 (1979). The manufacturer is under no duty, however, to warn of those dangers which are matters of common knowledge, Lovell v. Earl Grissmer Co., Inc., 422 So.2d 1344 (La.App. 1st Cir.1982); Tri-State Insurance Co. v. Fidelity & Casualty Insurance Co., 364 So.2d 657 (La.App. 1st Cir.1978), or of those dangers which are obvious to an ordinary user. Lovell, supra; Butler v. Atwood, 420 So.2d 742 (La.App. 4th Cir.1982); Albert v. J. & L. Engineering, 214 So.2d 212 (La.App. 4th Cir.1968). Moreover, to be relieved of the duty to warn, a manufacturer need not prove plaintiff's actual knowledge of the dangerit is sufficient that the manufacturer prove that the plaintiff should have known of the danger. Chappuis, supra, at 930; American Insurance Co. v. Duo Fast Dixie, Inc., 367 So.2d 415 (La.App. 4th Cir.1979); Foster v. Marshall, 341 So.2d 1354 (La.App.2d Cir.1977). It follows that the manufacturer is under no duty to warn a "sophisticated user" of those dangers which he may be presumed to know through his familiarity with the product. Walter v. Valley, 363 So.2d 1266 (La.App. 4th Cir.1978); Byrd v. Hunt Tool Shipyards, Inc., 650 F.2d 44 (5th Cir.1981).
The warnings at issue in this case provide as follows:

GENERAL SAFETY PRECAUTIONS
. . . . .
2. AVOID DANGEROUS ENVIRONMENT. Don't use power tools in damp or wet locations. Keep work area well lit. Do not expose power tool in rain.
. . . . .
OUTDOOR USE EXTENSION CORDS. When tool is used outdoors, use only extension cords suitable for use outdoors and so marked.
With specific reference to the need for proper grounding, the operator's manual provides:
GROUNDING INSTRUCTIONS: This tool should be grounded while in use to protect the operator from electric shock. The tool is equipped with an approved three-conductor cord and three-prong grounding-type plug to fit the proper grounding-type receptacle. The green (or green and yellow) conductor in the cord is the grounding wire. Never connect the green (or green and yellow) wire to a live terminal ...

*1214 EXTENSION CORDS. Use only three-wire extension cords which have three-prong grounding-type plugs and three-pole receptacles which accept the tool's plug. Replace or repair damaged or worn cord immediately....
Plaintiff-appellant contends, first, that the above instructions are too general and too casual to sufficiently warn the consumer of the risk of electrocution if the saw is used in a damp environment without proper grounding. Plaintiff insists that the words "This tool should be grounded ...", are not sufficiently commanding and that their intensity is not proportionate to the risk. She argues, further, that the phrase, "... to protect the operator from electrical shock ..." (emphasis hers) does not apprise the user of the risk of electrocution. Appellant contends that such expressions render the Skilsaw manual merely instructive, and that mere instructions, as distinguished from warnings, are regarded by the law as inadequate to protect the consumer. Boyl v. California Chem. Corp., 221 F.Supp. 669 (D.Oregon 1963) and cases collected at 72 Corpus Juris Secundum, § 25 et seq.
In support of these arguments, plaintiff presented the expert testimony of Mr. Joseph Loninger, an electrical engineer, who stated that it is common for construction workers to use power tools in wet areas and for grounding errors to cause ground wires to become energized, as happened in this case. Given the gravity of the risk posed by such occurrences, Loninger said, the instructions contained in the Skilsaw manual were inadequate as warnings, since they did not put the user on notice that failure to ground could lead to electrocution. Loninger also found special fault with the manual's failure to advise the user of the hazardous consequences of operating the saw in a wet or damp area. Mr. George Flache, also an electrical engineer, similarly condemned Skilsaw's instructions for using the word "shock" rather than "electrocution", because, in his opinion, the first term does not sufficiently convey the risk of death.
In opposition to these experts, the defendant presented the testimony of Mr. Frank K. Kaman, an expert in electrical and mechanical engineering, with special expertise in the design, development, and safety of electric saws and tools. He stated that, in his opinion, the instructions which accompany the Skilsaw are sufficient to warn the average consumer that using an ungrounded Skilsaw in a damp or wet environment poses a risk of electrocution. Kaman emphasized that the language of Skil's warning was taken nearly verbatim from the warnings recommended for such tools by Underwriters Laboratory (U.L.)[3] and that U.L. sets the standards of the industry. These standards are adopted by various federal and local agencies, including O.S.H.A., whose chief task is to monitor safety in the workplace.
Defendant Skil also takes issue with plaintiff's characterizing the operator's manual as merely "instructive". Skil notes that the manual does inform the consumer that a specific riskelectrick shockaccompanies use of an ungrounded tool. Thus, defendant argues, the manual contains not merely an instruction, but a warning.
*1215 After considering these arguments, the trial court held for the defendant, reasoning that
The warning given is held to be adequate. The fact that the possible death by electrocution is not spelled out as a consequence of failure to adhere to instructions does not negate the warning of electrical shock. Electrical shock is a universally avoided occurrence, not only because of the possibility of serious injuries, but also possible ensuing death.
The testimony revealed that the decedent was engaged as a carpenter for several years, and because of such should have been aware of the proclivities of electric hand tools.
We find no reason to dispute the trial court's determination that the warnings were adequate. Such a finding, being in large part a factual one, must not be disturbed in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973).
The decedent was indeed warned of the danger of electrical shock resulting from use of an ungrounded tool, and we find no manifest error in the trial court's conclusion that "Electrical shock is a universally avoided occurrence, because of the possibility of ... ensuing death." That is indeed a truism, and because it is, Skil was under no legal duty to express in any greater detail than it actually did the consequences of using an ungrounded tool. As we noted earlier, a manufacturer has no duty to warn against commonly known danger, and as the plaintiff herself has pointed out, "electrocution" is, by common definition, death caused by electric shock.
More compelling still is the trial court's finding that Ducote was not an average consumer, but an experienced carpenter who knew or should have known the foreseeable hazards of a principal tool of his trade, the electric saw. Finding no manifest error in that factual determination, we agree that Skilsaw owed no duty to warn Ducote of dangers which he, as a "sophisticated user," already knew or should have known to exist, and it necessarily follows that the warnings which Skil did in fact provide met the requirements of the law.
Having determined that the trial court did not clearly err in finding that Skil Corporation's warnings to the decedent were adequate, we must affirm the judgment.
AFFIRMED.
NOTES
[1] The plaintiff settled her claims against eight other defendants prior to trial. Skil is the only remaining defendant in this action.
[2] La.C.C. art. 2545 provides:

The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages.
[3] For example, U.L. Standard No. Underwriters Laboratories 45, the publication which addresses the safety of portable electric tools, states:

28.1(A). For All Grounded Tools
1. Grounding Instructions
This tool should be grounded while in use to protect the operator from electric shock. The tool is equipped with a three-conductor cord and three-prong grounding type receptacle. The green (or green and yellow) conductor in the cord is the grounding wire. Never connect the green (or green and yellow) wire to a live terminal.
2. Extension Cords
Use only three-wire extension cords that have three-prong grounding-type plugs and three-pole receptacles that accept the tool's plug. Replace or repair damaged cords.
. . . . .
C. For All Tools:
2. Consider Work Area Environment
Don't expose power tools to rain.
Don't use power tools in damp or wet locations.