792 So.2d 73 (2001)
J.P. COWART, Jr., et al.
v.
AVONDALE INDUSTRIES, INC., et al.
No. 2001-C-0894.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 2001.
Rehearing Denied September 6, 2001.
A. Wendel Stout, III, Joseph L. McReynolds, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, La., Counsel for Defendant-Relator.
Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, and Judge DAVID S. GORBATY.
TOBIAS, Judge.
We grant certiorari to consider Unimin Corporation's contention that the trial court erred in failing to grant its motion for summary judgment.
Although we note that as a technical matter the decrees set forth in the 10 April 2001 judgment are inconsistent,[1] we interpret the judgment as a ruling that overruled Unimin Corporation's motion for summary judgment.
We conduct a de novo review of the trial court's denial of the summary judgment to determine whether summary judgment is appropriate.
Plaintiff, J.P. Cowart, worked for Avondale Industries, Inc. as a chipper and grinder in its foundry from 1978 to 1995. He alleges that he contracted silicosis from being exposed to silica-containing products used at the foundry. Plaintiffs filed suit against Avondale, its executive officers, certain manufacturers of respiratory equipment, and several manufacturer/suppliers of silica sand. Unimin was made a defendant in Plaintiffs' Third Supplemental and Amending Petition for its alleged liability in the manufacture, sale and/or distribution of sand, and as successor in *74 interest to Silica Products Company, Inc. Plaintiffs' allegations against Unimin and the other "silica defendants" are that their products are unreasonably dangerous per se, defective in design, and constituted a breach of warranty. Plaintiffs further allege that the silica defendants either failed to warn them of the danger of exposure to their products, or that the warnings were inadequate. Finally, plaintiffs allege that the silica defendants failed to substitute available alternative products along with fraudulently concealing the dangers and health hazards associated with the use and exposure to their products.
Avondale used sand in its foundry to make molds for steel and bronze castings. Unimin began supplying sand to Avondale in October 1988. Unimin mines sandstone, and then washes, sorts, and grades the sand grains for shipment.
Avondale specified in its purchase orders to Unimin that it be supplied sand with grain sizes of 50 microns. Both plaintiffs and Unimin are in agreement that particles 10 microns or less are "respirable" and can be breathed into and remain deposited the lungs.
Unimin originally moved for summary judgment arguing that Avondale was a "sophisticated user" of silica sand, aware of the hazards associated with it, thereby relieving Unimin of any duty to warn Avondale or its employees of the dangers associated with the use of its sand at the foundry. The trial judge partially granted Unimin's motion on 18 February 2000, agreeing that Avondale was a sophisticated user of silica sand. The trial judge also partially denied the motion, based on the concern that Unimin may have had a duty to advise Avondale of safer alternatives.
Since that time, Danny Joyce, Avondale's industrial hygienist from 1980 to 1990, has been deposed. Unimin asserts that Mr. Joyce's deposition establishes three things: (1) that Avondale was aware of zircon sand and olivine as substitutes for silica sand, and had in fact used them in some quantity before 1980, (2) that Avondale was aware of the dangers associated with exposure to silica dust and respirable particle sizes below 1 micron since at least 1980 when he began working there, and (3) that in the mid to late 1980's Avondale made HEPA filters mandatory for all workers exposed to particulate hazards.
In 1988, the Louisiana Legislature enacted the Louisiana Products Liability Act (LPLA). La. R.S. 9:2800.51 et seq. The LPLA establishes the exclusive theories of liability for manufacturers for damage caused by their products. Under the LPLA, liability may be imposed on a manufacturer when a product is found to be unreasonably dangerous in one of four ways: construction or composition, design, inadequate warning, or nonconformity to express warning. The LPLA placed a higher burden of proof on the injured plaintiff by abolishing the "unreasonably dangerous per se" category established by Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986). The LPLA's effective date was September 1, 1988. Accordingly, any liability of Unimin is governed by the LPLA.
Unimin argues that its sand is a raw material that is merely mined, washed, sorted and graded, rather than being "manufactured or designed" by Unimin. Therefore, Unimin claims that the only theory under which plaintiffs can recover against it is for failure to provide an adequate warning.[2] Unimin cannot be liable *75 to plaintiffs under an unreasonably dangerous in design theory because Unimin did not manufacture or design its sand. Unimin made no express warranty about its sand; therefore, plaintiffs' breach of warranty theory has no merit.
The LPLA provides the following with regard to products that are unreasonably dangerous because of inadequate warning:
A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
B. A manufacturer is not required to provide an adequate warning about his product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic....
La. R.S. 9:2800.57.
Unimin argues that the sand it supplied to Avondale was not dangerous when sold because the sand grains were above respirable size. Unimin argues that any dangerous respirable silica dust was created by the chipping and grinding of the molds from the steel and bronze castings, a process over which Unimin had no control. Unimin also suggests that Avondale had actual knowledge of the dangers associated with silica sand, that it had an obligation to protect its employees from respirable dust, and that it was aware of several safer sand substitutes. Accordingly, Avondale was a sophisticated user and Unimin was relieved of any duty it may have otherwise had to warn Avondale, or its employees, of the dangers of breathing silica dust.
In a products liability suit brought by a sandblaster who contracted silicosis while using sand supplied to his employer, this court held that sand is not unreasonably dangerous per se. Damond v. Avondale Industries, Inc., 98-1275, p. 3 (La.App. 4 Cir.8/19/98), 718 So.2d 551, 552. This court based its finding on the fact that sand is a natural substance dangerous to sandblasters, not through the fault of the sand, but in the use to which the sand is put. This court went on to find that the sand company had no duty to directly warn the plaintiff of the danger in using its sand for sandblasting. This conclusion was based on two grounds. First, plaintiff's employer was held to be a "sophisticated user" who was presumed to know the dangers in the use of sand in sandblasting because of its familiarity with both the product and the OSHA regulations governing its use. As such, the warning on the sand companies invoices, that the product contained silica and that failure to use with proper safety devices may result in lung injury or disease, was sufficient to warn plaintiff's employer of the dangers of using sand in sandblasting. Secondly, while the sand supplier knew its sand would be used in sandblasting, it had no control over how plaintiffs employer would conduct its sandblasting operation, nor did it have any practical means of conveying any warning to the individual sandblasters.
*76 Plaintiffs argue that Damond should be limited to its facts. They further argue that this court has failed to follow its decision in Damond, even as to another sand supplier who moved for summary judgment in the same case. See Damond v. Avondale Industries, Inc., 99-2267 (La. App. 4 Cir. 11/15/00), 773 So.2d 266 (Damond II). These arguments are without merit. In Damond II, this court distinguished defendant Quikrete's writ from that previously brought by Pearl Specialty Sands, Inc. (Pearl). This court found that Quikrete processed and refined its sand, compared to Pearl's merely sorting, drying, and bagging ordinary sand. The fact that Quikrete was doing more to alter the natural state of its sand, coupled with the Quikrete warning that its sand be kept out of the reach of children, raised issues concerning the hazardous nature of Quikrete's sand that went beyond those found by this court to be true of Pearl's sand. The sand supplied here by Unimin can be likened to the sand supplied by Pearl. While Unimin's sand was mined from the earth, it was not processed or refined like the Quikrete product.
Plaintiffs also argue that Damond is inapplicable to the case at bar because the OSHA regulations cited therein, that the employer was presumed to know, dealt with sandblasting rather than foundry operations. Plaintiffs further argue that no specific OSHA regulations exist regarding silica use in foundry operations. Unimin counters that the regulations cited in Damond apply to the general industry, which necessarily includes foundries. In addition, Unimin offered the testimony of William Kimble, a former Avondale foundry plant manager from 1961 to 1984, which provided that Avondale had a Safety Department that was responsible for assuring compliance with OSHA regulations at both the shipyard and the foundry. Unimin also offered the testimony of Carlos Aiello, another former Avondale foundry plant manager from 1984 to 1995, which provided that Avondale was aware of the need to protect its workers from the health hazards associated with the inhalation of silica sand, and that it did so by providing them with respirators and by providing ventilation systems. Unimin met its burden of showing that the OSHA regulations cited in Damond applied to foundries. As such, Damond supports Unimin's contention that Avondale was a sophisticated user. Similar to the situation in Damond, Unimin had no control over how Avondale was operating its foundry, nor was there any practical way for Unimin to convey any warnings directly to individual foundry workers like Mr. Cowart. The trial court's finding that Avondale was a sophisticated user was correct.
Although the decisions regarding sophisticated users hold that the manufacturer has no duty to warn such users of dangers inherent in the use of their product, the courts nevertheless generally go on to consider whether the warning given was, in fact, adequate. See Damond v. Avondale Industries, Inc., 98-1275 (La.App. 4 Cir. 8/19/98), 718 So.2d 551, Ducote v. Liberty Mut. Ins. Co., 451 So.2d 1211 (La.App. 4 Cir.1984), Hines v. Remington Arms Co., Inc., 94-0455 (La.12/8/94), 648 So.2d 331.
Unimin provided warnings to Avondale both on their invoices and on any sand sold in bags. Although its warnings contained minor revisions from time to time, during the applicable time period, the bag warning basically warned that there was a health hazard because the product contained silica dust that should not be breathed, that prolonged inhalation of silica particles can cause delayed lung injury (silicosis), and that OSHA safety and health standards should be followed. The invoice warnings provided that there was a health hazard warning, that prolonged inhalation of airborne silica particles can cause silicosis, a progressive and sometimes *77 fatal lung disease, and that the law required Avondale to take precautions for the safety of its employees who had contact with silica sand. These warnings were more than adequate to warn Avondale, a sophisticated user, of the dangers associated with the inhalation of silica dust.
Plaintiffs' arguments in opposition concern whether Unimin had a duty to warn Avondale and its employees that HEPA filters, or air supplied respirators, should be used to filter out any respirable silica particles created in its foundry operations.
Hines, supra, was a products liability suit brought against a gunpowder manufacturer for injuries sustained by a consumer when his rifle accidentally discharged into a container of gunpowder and ignited it. The plaintiff therein first argued that the manufacturer had a duty to warn him of the inherent danger of the gunpowder. The Supreme Court of Louisiana held that because the plaintiff was a sophisticated user of rifles and gunpowder, aware of the dangers of pointing a loaded high-powered rifle at gunpowder, the manufacturer, as a matter of law, had no duty to warn against such action. Plaintiff next argued that the manufacturer should have warned him of a safer way to store the gunpowder, i.e. in a wooden box rather than in a can. The Court concluded that the manufacturer's warnings were sufficiently clear to instruct plaintiff on the dangers of the gunpowder and the need to exercise prudence in using and storing the powder, and that the manufacturer's duty to warn did not extend to advising plaintiff of the particular storage methods for the powder. Although Hines was decided under Halphen, the Court's analysis would apply with equal force to a failure to adequately warn case brought under the LPLA. Having advised Avondale of the need to protect its workers from the dangers of inhaling silica dust, and of the need to follow OSHA safety and health standards, Unimin was under no further duty to instruct Avondale, a sophisticated user, of the precise type of respirator that should be used by its foundry employees when working with Unimin's sand.
Plaintiffs also argue that Unimin owed a duty to Avondale to make it aware of safer alternative products.
This argument has no basis under Louisiana law. The LPLA provides that a product is unreasonably dangerous in design if, at the time the product left the manufacturer's control, there existed an alternative design for the product that was capable of preventing the claimant's damage. La. R.S. 9:2800.57. Unimin cannot be held liable under an unreasonably dangerous design theory because it did not "design" or manufacture its sand. In addition, the LPLA section on inadequate warnings does not mention any requirement that a manufacturer advise the users of its product of any information regarding the existence of safer alternative products. Once having found Avondale to be a sophisticated user, the trial court should have granted Unimin's motion for summary judgment and dismissed plaintiff's claims against it.
Accordingly, we grant the writ of certiorari. We reverse the judgment of the trial court and dismiss the plaintiffs' claims against Unimin Corporation.
WRIT GRANTED; JUDGMENT REVERSED; RENDERED
JONES, J., dissents.
JONES, J., dissenting.
I respectfully dissent from the majority decision granting supervisory writs in this case. I would deny the writ.
NOTES
[1] When the trial court denied the motion to re-urge the motion for summary judgment, in essence the court declined to rule upon the summary judgment. Thus, logically the court should not have ruled upon the motion for summary judgment.
[2] The definition of manufacturer under the LPLA includes an "entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product." La. R.S. 9:2800.53. Thus Unimin is a "manufacturer" subject to the provisions of the LPLA because it labeled its sand as its own.