Sandra Sue FULLEN, et al. Plaintiffs,

v.

PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, a Delaware Corporation, et al. Defendant.

No. CIV.A. 1:02CV64.

United States District Court,
N.D. West Virginia.

Dec. 18, 2002.

Gary W. Rich, Morgantown, WV, Nancy Seidler Eichler, Masry & Vititoe, Westlake Village, CA, Paul Scott Summy, Steve B. Jensen, Ellen Presby, Alicia Butler, Thomas M. Sims, Amy M. Carter, Laura J. Baughman, Baron & Budd, PC, Dallas, TX, for Plaintiffs Sandra Sue Fullen, et al.

A.L. Emch, Gina Fantasia, Esquire, Jackson & Kelly, PLLC, Fairmont, WV, Brian W. Shaffer, Kevin M. Donovan, James D. Pagliaro, Morgan, Lewis, & Bockius, LLP, Philadelphia, PA, for Defendant Phillips Electronics North America Corporation, Philips Lighting Company, C.B.C. Division, Marilyn G. Gifford, John L. Michael, Paul "Sparky" Zepp.

Paul D. Steinman, Timothy P. Ryan, Eckert, Seamans, Cherin & Mellott, PLLC, Pittsburgh, PA, William J. Leon, Eckert, Seamans, Cherin & Mellott, PLLC, Morgantown, WV, for defendant Westinghouse Electric Corporation, Viacom, Inc.

Geraldine S. Roberts, McNeer, Highland, McMunn & Varner, LC, Clarksburg, WV, James A. Varner, McNeer, Highland, McMunn & Varner, Martinsburg, WV, for defendant Chem Quick, Inc.

Robert H. Miller, Robert H. Miller, II, Sutter Law Firm, PLLC, Charleston, WV, for Defendant Blue Ribbon Paint Company, Par Chem.

### ORDER

KELLEY, District Judge.

This matter comes before the Court on the Plaintiffs' Motion to Remand. The parties have fully briefed the motion and have also submitted two rounds of supplemental briefing. The issue is ripe for review, and, based on the analysis that follows, the Court **REMANDS** this action to the Circuit Court of Marion County, West Virginia.

### *Background.*[1]

The Plaintiffs in this case worked in a glass and bulb factory in Fairmont, West Virginia (the "factory"). Glass and bulbs were manufactured on the second floor of the factory. Factory employees regularly performed their duties without protective clothing, and routinely engaged in tasks such as pouring mercury from one open container into another. Other chemicals used in the manufacturing process included: arsenic, beryllium, cadmium, chromium, lead, tin, zinc oxide and other heavy metals, thallium, perchloroethene, trichloroethane, methyl chloride, PCB compounds, benzene, toluene, vanadium, benzo(b)fluoranthene, benzo(a)pyrene, ethylbenzene, chlorinated fluorocarbons, 2–butanone, ethanol amine, xylene, and asbestos. Employees typically toiled in a toxic fog so thick that it was difficult to see from one end of the factory to the other.

This noxious cloud would sift through the floorboards to the product assembly area on the lower level, leaving a light chemical soot on the floor and the assembly-line workers below. During the assembly process, thousands of glass bulbs would break each day, releasing mercury and beryllium into the air. Temperatures in the factory often exceeded one hundred degrees Fahrenheit.

The Plaintiffs allege that these conditions began in 1941, and they caused many

---

1. The facts described in this Order are derived entirely from the allegations contained in the Plaintiffs' amended complaint. The parties have not agreed or stipulated to these facts, and this Court does not make any findings of fact in this case.

employees to develop adverse health conditions, including lung cancer, bladder cancer, leukemia, esophageal cancer, pancreatic cancer, renal cancer, brain cancer, liver cancer, Hodgkin's lymphoma, multiple myeloma, prostate cancer, renal damage, peripheral neuropathy, painful bone disorders, memory deficits, peripheral neurotoxicity, and central nervous system damage.

On December 18, 2001, nearly 1200 former factory employees filed a complaint in the Circuit Court of Marion County, West Virginia, against their employer, Philips Electronics North America Corporation, its predecessor-in-interest, Westinghouse Electric Corporation, various individual factory managers, and some factory suppliers. The complaint was amended on April 15, 2002, and generally alleges that the Defendants committed various state-law torts when they either failed to communicate or made deliberate and fraudulent communications that concealed the deadly health effects of working at the factory.

The Defendants removed the case to this Court on May 13, 2002, claiming that the Occupational Safety and Health Act's (OSH Act) Hazardous Communication Standard, 29 C.F.R. § 1910.1200 (HazCom Standard), occupies the field of workplace hazard communications and therefore preempts the Plaintiffs' state-law tort claims. The Defendants concede that the amended complaint in this case states no federal claims, but instead contend that federal question jurisdiction arises under the Supreme Court's "complete preemption" doctrine.

The Plaintiffs now move to remand this action to the Circuit Court of Marion County, West Virginia.[2]

### Analysis.

#### A. "Complete Preemption."

■ 28 U.S.C. § 1441(a) states:

[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Federal district courts have original jurisdiction over "federal question" cases, which "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

■ Ordinarily, federal preemption is a defense and will not support removal. *Id.* However, the doctrine of "complete preemption" is an exception to the well-pleaded complaint rule and essentially permits a district court to "convert[ ] an ordinary state common-law complaint into one stating a federal claim." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The doctrine is applicable where "the preemptive force of [a statute's preemption clause] is so powerful as to displace entirely any state cause of action" that could have been

---

**2.** Plaintiffs argue that the OSH Act's savings clause, which states that nothing in the Act shall "enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases or death of employees arising out of, or in the course of, employment," 29 U.S.C. § 653(b)(4), trumps the preemptive language of the HazCom Standard. Although the Court is doubtful that a regulatory pronouncement can override the will of Congress, the issue need not be reached on this motion and the Court does not decide it.

brought under the federal statute. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). "Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [the federal statute]." *Id.*

The complete preemption doctrine is extraordinary and has only been recognized under two statutes. The doctrine was created under § 301 of the Labor Relations Management Act (LMRA) in *Avco Corp. v. Aero Lodge No. 735, International Association of Machinists and Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), where the plaintiff sued under a no-strike clause in its collective bargaining agreement to enjoin the defendant union members from striking at the plaintiff's plant. 390 U.S. at 558, 88 S.Ct. 1235. Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The *Avco* court noted that any action that could be brought under this section was controlled by federal law. 390 U.S. at 560, 88 S.Ct. 1235 (citing *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). The Court held that the controlling nature of the federal law, combined with the availability of a federal statutory cause of action, allowed the conclusion that any claim that could be brought under § 301 of the LMRA "is one arising under the 'laws of the United States' within the meaning of the removal statute." *Id.* Thus, the plaintiff's facially pled state-law claims were transformed into federal claims for purposes of removal jurisdiction. *Id.*

The Supreme Court extended the complete preemption doctrine to § 502 of ERISA in *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The plaintiff brought suit against his former employer alleging state-law claims that could have been brought under ERISA's civil enforcement provision, 29 U.S.C. § 1132 (section 502 of the Act). 481 U.S. at 60, 107 S.Ct. 1542. The Supreme Court began its analysis by recognizing that Congress' intent to preempt the field of retirement plan regulation under ERISA was not enough to invoke the *Avco* rule. 481 U.S. at 64, 107 S.Ct. 1542 (citing *Franchise Tax Bd.*, 463 U.S. at 24–25, 103 S.Ct. 2841). Furthermore, even where a statute occupies the field of law and the state-law claim falls squarely within the Act's civil enforcement provision, the Supreme Court was "reluctant to find that [the] extraordinary preemptive power" enunciated in *Avco* was applicable. 481 U.S. at 64, 107 S.Ct. 1542. This reluctance was overcome, however, by the presence of language strikingly similar to § 301 of the LMRA in ERISA's civil enforcement provision:

> The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

29 U.S.C. § 1132(f). This language, in conjunction with the statute's general preemptive force and the fact that the state-law claims could have been brought under the Act's civil enforcement provi-

sion, supported the extension of the *Avco* rule to § 502 of ERISA. 481 U.S. at 64–65, 107 S.Ct. 1542.

■ Despite the fact that the complete preemption doctrine has only been applied to these two statutes, the Defendant now invites the Court to extend it to the Haz-Com Standard. The Court declines the invitation.

The Fourth Circuit has outlined a test to determine whether the complete preemption doctrine is applicable in a given circumstance:

> In applying the complete preemption doctrine, courts generally look first to the preemptive *scope* of the federal statute and second to its preemptive *force*. A statute's preemptive force is measured by the extent to which it precludes state court consideration of claims falling within the statute's preemptive scope.... Only where the federal statute's preemptive scope is sufficiently broad to reach a purported state law claim and its preemptive force is sufficiently powerful to convert that particu-

lar claim into a federal claim will the complete preemption doctrine apply.

*Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir.1996) (internal quotations and citations omitted) (emphasis in original).

■ The preemptive scope of the HazCom Standard does not encompass state-law tort actions, but is more likely limited to a state's ability to set occupational safety and health standards. Courts should only find preemption to the extent there is "an unambiguous Congressional mandate to that effect." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). The Defendant focuses on the preemptive language set forth in the "purpose" section of the HazCom Standard, specifically: (1) "This occupational safety and health standard is intended ... to preempt any legal requirements of a state, or political subdivision of a state, pertaining to this subject"; and (2) "no state or political subdivision of a state may adopt or enforce, through any court or agency, any requirement relating to the issue addressed by this Federal standard." 29 C.F.R. § 1910.1200(a)(2).[3] This language,

**3.** The entire section states:

> (a) *Purpose*. (1) The purpose of this section is to ensure that the hazards of all chemicals produced or imported are evaluated, and that information concerning their hazards is transmitted to employers and employees. This transmittal of information is to be accomplished by means of comprehensive hazard communication programs, which are to include container labeling and other forms of warning, material safety data sheets and employee training.
>
> (2) This occupational safety and health standard is intended to address comprehensively the issue of evaluating the potential hazards of chemicals, and communicating information concerning hazards and appropriate protective measures to employees, and to preempt any legal requirements of a state, or political subdivision of a state, pertaining to this subject. Evaluating the potential hazards of chemicals, and com-

municating this information concerning hazards and appropriate protective measures to employees, may include, for example, but is not limited to, provisions for: developing and maintaining a written hazard communication program for the workplace, including lists of hazardous chemicals present; labeling of containers of chemicals in the workplace, as well as of containers of chemicals being shipped to other workplaces; preparation and distribution of safety data sheets to employees and downstream employers; and development and implementation of employee training programs regarding hazards of chemicals and protective measures. Under Section 18 of the Act, no state or political subdivision of a state may adopt or enforce, through any court or agency, any requirement relating to the issue addressed by this Federal standard, except pursuant to a Federally-approved state plan.

while generally indicating a preemptive intent, does not mention a private right of action under the OSH Act, nor does it grant exclusive jurisdiction to federal courts over cases dealing with the subject of hazard communications in the workplace. Moreover, the OSH Act does not authorize private enforcement. *See Wickham v. American Tokyo Kasei, Inc.,* 927 F.Supp. 293, 295 (N.D.Ill.1996) ("[C]ourts have consistently held that OSHA is a purely regulatory provision that creates no private right of action. Instead, it is enforced by fines or criminal prosecutions.") Such a structure creates ambiguity about Congress' intent to preempt state-law tort claims. Furthermore, the OSH Act was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b); *see also Wickham,* 927 F.Supp. at 295 (OSH Act is "a statute designed specifically to protect employees and others from ... potential hazards.") Cutting off an avenue of recourse for accident victims would be contrary to statute's express purpose. *See also Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 251, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) ("It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct.")

The HazCom Standard also lacks the necessary preemptive force to invoke the complete preemption doctrine. The Standard does not completely divest states of their authority to regulate the subject of hazard communications. It clearly contemplates concurrent federal and state enforcement when it states: "Under Section 18 of the Act [29 U.S.C. § 667], no state or political subdivision of a state may adopt or enforce, through any court or agency, any requirement relating to the issue addressed by this Federal standard, except pursuant to a Federally-approved state plan." 29 C.F.R. § 1910.1200(a)(2).[4] Moreover, this language is not surplusage or formal acknowledgment; when issuing the final rule that created the HazCom Standard, OHSA noted the states where such state regulation already exists and permitted them to adopt their own conforming hazard communication standards. *See* 48 F.R. 53280 ("The twenty-four states with their own OSHA-approved occupational safety and health plans must adopt a comparable standard within six months of this publication date.").

Thus, where § 301 of the LMRA and § 502 of ERISA vest federal courts with exclusive jurisdiction over the subject matter covered in their respective Acts, the HazCom Standard mentions nothing about the courts and permits concurrent state regulation of the subject matter it addresses. These differences militate against extending the complete preemption doctrine into this new area.

### B. "Standard" Preemption.

 As discussed above, the HazCom Standard itself evidences nothing more than an intent to establish a uniform regulatory benchmark. This is entirely consistent with one principal purpose of the OSH Act, *see Gade v. National Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 99, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (Congress "intended to subject employers and employees to only one set of regulations"), and the HazCom Standard itself, *see* 48 F.R. 53280–81 (purpose is to "establish uniform requirements for hazard communication"). This limitation also suggests a

4. Section 18 generally preempts all state laws for which the Occupational Safety and Health Administration (OHSA) has issued a regulation, but permits state regulation under an OHSA-approved plan. 29 U.S.C. § 667.

more appropriate means of dealing with the Defendant's concerns.

In *Geier v. American Honda Motor Company, Inc.*, 529 U.S. 861, 120 ·S.Ct. 1913, 146 L.Ed.2d 914 (2000), the Supreme Court held that, where a federal law simply sets a uniform standard, state-law tort actions are only preempted when the complaint seeks to hold the defendant to a standard of conduct that will interfere with what federal law otherwise requires. The plaintiff in *Geier* claimed that Honda had designed its 1987 Honda Accord negligently because it lacked a driver's side air bag. 529 U.S. at 865, 120 S.Ct. 1913. At the time the car was manufactured, Federal Motor Vehicle Safety Standard 208 was in effect and required auto manufacturers to choose from an array of safety systems to install in their cars. *Id.* at 878, 120 S.Ct. 1913. The Supreme Court held that the plaintiff's state tort action was preempted because it sought to hold Honda responsible for failing to adhere to a single standard of conduct (installing air bags), which "would have presented an obstacle to the variety and mix of devices that the federal regulation sought." *Id.* at 881, 120 S.Ct. 1913.

 *Geier* dealt with a state tort claim that sought to enforce one standard where the federal law permitted many. Here, the HazCom Standard provides only one measure to follow, which makes the interference inquiry much simpler. If the state tort claim. does not seek to hold the defendant to a higher standard of conduct than that required by federal law, there can be no interference and the claim is not preempted.[5] *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 524, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (The court "must look to each of petitioner's common law claims to determine whether it is in fact pre-empted .... Thus, insofar as claims under either failure to warn theory require a showing that respondents' post–1969 advertising or promotions should have included additional, or more clearly stated warnings, those claims are preempted."); *Moss v. Parks Corp.*, 985 F.2d 736, 740 (4th Cir.1993) ("[A] common law tort action based upon failure to warn [under FHSA] may only be brought for non-compliance with existing federal labeling requirements. In actions such as the present one, if the plaintiff requests a label that is 'more elaborate or different' than the one required by the FHSA and its regulations, the claim is preempted."). Thus, where the trial court knows the mandatory applicable standard of behavior, it can avoid potential regulatory conflicts by either applying that standard to a dispositive motion or instructing the jury accordingly.

The Plaintiffs' amended complaint alleges that the Defendants either failed to inform, purposefully concealed, or fraudulently misrepresented the hazardous condi-

---

5. The Defendant's contention that the Plaintiffs' state-law tort claims can interfere with the regulatory scheme is thus unfounded. While it is true that state-law tort actions possess the potential to create or modify standards of conduct, *see Medtronic v. Lohr*, 518 U.S. 470, 504, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (Breyer, concurring) ("To distinguish between [promulgated regulations and jury verdicts] for preemption purposes would grant greater power (to set state standards 'different from, or in addition to,' federal standards) to a single state jury than to state officials acting through state administrative or legislative lawmaking processes."), sometimes a jury verdict is just a means of providing compensation to victims, *see Sprietsma v. Mercury Marine*, 537 U.S. 51, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002). ("It would have been perfectly rational for Congress not to pre-empt common-law claims, which—unlike most administrative and legislative regulations—necessarily perform an important remedial role in compensating accident victims.")

tions at the glass works facility. There is no demand that the Defendants should have conformed to a particular standard of conduct; on the contrary, the allegations contend that the Defendants did nothing. Regardless of what the HazCom Standard specifically requires, it requires something—which undoubtedly is more than what the Defendants are accused of doing. Plaintiffs' claims therefore do not exceed the requirements of the HazCom Standard and are not preempted.

## CONCLUSION.

Defendant's Notice of Removal is defective, as the United States Supreme Court's "complete preemption" doctrine is not applicable to 29 C.F.R. § 1910.1200, and thus does not create federal question jurisdiction in this case. Furthermore, Plaintiffs' Amended Complaint does not seek to hold Defendant to a standard of conduct higher than that required under the applicable federal statute, and their state-law tort claims are therefore not preempted. Accordingly, the Court **GRANTS** the Plaintiffs' Motion to Remand and **REMANDS** this action to the Circuit Court of Marion County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to send copies of this order to counsel of record.