STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-187

WILBERT BATES, ET UX.

VERSUS

E. D. BULLARD COMPANY, ET AL.

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-131-09
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Lawrence J. Centola, III**
**Martzell & Bickford**
**338 Lafayette St.**
**New Orleans, LA 70130**
**(504) 581-9065**
**Counsel for Plaintiffs/Appellants:**
**Wilbert and Edna Bates**

**Katherine Marie Loos**
**Attorney at Law**
**P. O. Drawer 51345**
**Lafayette, LA 70505-1345**
**(337) 534-4770**
**Counsel for Defendant/Appellee:**
**Southern Silica of Louisiana, Inc.**

**Scott W. Browne**
**Coffey & Browne, L.L.P.**
**2390 Eastex Freeway, Ste 100**
**Beaumont, TX 77703**
**(409) 898-5800**
**Counsel for Defendant/Appellee:**
**Specialty Sand Company**

**PICKETT, Judge.**

The plaintiff, who contracted silicosis as a result of his exposure to silica dust in his employment as a sandblaster, and his wife appeal the trial court's grant of summary judgment dismissing their claims against the defendants that supplied sand to his employer for sandblasting. For the following reasons, we affirm.

## FACTS

Wilbert Bates was employed by SBA Shipyards for the period 1980-1989. During that time, Mr. Bates' work duties included cleaning and/or sandblasting, both of which exposed him to silica dust. In June 2009, Mr. Bates was diagnosed with silicosis, a lung disease caused by the inhalation of small pieces of sand known as respirable silica which are a result of sandblasting. Mr. Bates and his wife filed suit against numerous defendants, asserting strict liability, negligence, and products liability claims against them.

In their suit, the Bates alleged that the sand "manufactured and/or sold" to his employer by two defendants, hereinafter referred to as the sand defendants, was unreasonably dangerous or defective because the sand defendants failed to warn and instruct him and SBA of the hazards of the sand and failed "to properly design products in that products were defective for failure to instruct and warn." The sand defendants, Specialty Sand Company and Southern Silica of Louisiana, Inc., filed motions for summary judgment, asserting they had no duty to warn Mr. Bates or SBA of the dangers of sand they sold to SBA for sandblasting.

After a hearing, the trial court granted summary judgment in favor of the sand defendants. The Bates appealed, assigning four errors with the trial court's judgment.

## ASSIGNMENTS OF ERROR

The Bates assign these issues for our consideration:

1.  Prior to the passage and effective date of the Louisiana Products Liability Act, did a manufacturer or supplier have a duty to warn the "end user" of their product of a danger associated with its product?

2.  Are there issues of fact regarding Mr. Bates's knowledge of the danger of contracting silicosis from sandblasting with silica sand?

3.  Are there issues of fact regarding whether SBA was a "sophisticated user" of the defendants' sand?

4.  Did the Hazardous Communication Standard in 1983 establish a tort duty for the sand defendants to warn end users, such as Mr. Bates, of the dangers sand presents when used for sandblasting?

## SUMMARY JUDGMENT

Motions for summary judgments are subject to de novo review on appeal. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773. The appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate, which is does any genuine issue of material fact exist and is the mover entitled to judgment as a matter of law? La.Code Civ.P. art. 966(B).

"A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Ardoin v. Cleco Power, L.L.C.*, 10-815, p. 3 (La. 7/2/10), 38 So.3d 264, 266. A genuine issue of fact is "one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *King v. Ill. Nat'l Ins. Co.*, 08-1491, p. 6 (La. 4/3/09), 9 So.3d 780,784.

2

## DISCUSSION

The basis of the sand defendants' motions for summary judgment is the fourth circuit's opinion in *Damond v. Avondale Industries, Inc.*, 98-1275 (La.App. 4 Cir. 8/19/98), 718 So.2d 551, *writ denied*, 98-2854 (La. 1/8/99), 735 So.2d 637. *Damond* held that Pearl Specialty Sands, Inc., a supplier of sand, such as the sand defendants, had no duty as a matter of law to provide the plaintiff sandblaster with a warning of the dangers presented by sand when it is used for sandblasting. That conclusion was based on a number of factors, including: 1) the defendant sold the plaintiff's employer ordinary sand which it had collected, dried, and separated according to size; 2) sand is not unreasonably dangerous per se because it is a natural substance used in its natural state as a playground on the beach, for filling gardens, lawns, and children's sandboxes and for mixing with concrete; and 3) the danger presented by sand when used for sandblasting results from the manner in which it is used, not the condition of the sand itself.

The fourth circuit further determined the supplier did not have a duty to warn the purchaser/employer's employee's because the purchaser/employer was subject to and presumed to know the Occupation and Safety Health Act (OSHA) 29 C.F.R. § 1910.1-1450, which are detailed regulations that require employers engaged in various industries, including shipyards, provide respiratory protection for their employees. The court concluded the purchaser/employer was a "sophisticated user" to whom no duty to warn was owed. More importantly, the court determined that the supplier did not have a duty to warn the purchaser/employer's employees because, although the supplier may have known the sand it sold to the employer would be used for sandblasting, "it had no control over how [the employer] would conduct its operations" *and* because there was no

3

practical means by which the supplier could provide such warning to the purchaser/employer's employees. *Id.* at 553.

*Damond* relied in part on its earlier decision in *Longo v. E.I. DuPont De Nemours & Co.*, 93-756 (La.App. 4 Cir. 1/18/94), 632 So.2d 1193, *writ denied*, 94-673 (La. 4/29/94), 637 So.2d 464, where the court had reached the same result with regard to DuPont whose product, Teflon, had been incorporated in the plaintiff's oral implant that had been used to replace her right temporomandibular joint. The implant failed and had to be replaced with one of plaintiff's ribs. The plaintiff sued DuPont, alleging it was liable to her under the theory of strict liability. The court determined DuPont had no duty to warn the plaintiff of potential dangers Teflon presented because, although DuPont may have known the implant manufacturer would incorporate Teflon in a product it manufactured, it had "no control over the design, composition, testing or manufacture" of the product. *Id*. at 1197.

The fourth circuit reached the same result in *Cowart v. Avondale Industries, Inc.*, 01-894 (La.App. 4 Cir. 7/3/01), 792 So.2d 73, *writ denied*, 01-2719 (La. 1/4/01), 805 So.2d 211, where the plaintiff sued a supplier of sand used for making molds at a foundry. The foundry was held to be a sophisticated user because foundries are also subject to the above-cited OSHA regulations; therefore, the supplier had no duty to warn the employer or its employees of the dangers presented by sand when used for sandblasting.

The sand defendants attached to their motions affidavits which show that the factors present in *Damond* are present here. The sand defendants' affidavits show: 1) they obtain ordinary sand by dredging water bottoms; 2) after dredging, the sand is separated from the gravel then separated into various sizes of sand; 3) the sand is dried and screened, after which it is sold and delivered to purchasers. The sand is

4

utilized for different purposes and in different manners depending on the purchaser, e.g., foundry sand, masonry sand, blasting sand, and fill sand. Mr. Bates testified that the sand was delivered by eighteen wheelers which deposited the sand into a large tank. In turn, the sand would be hauled by a smaller truck to where it was needed for sandblasting.

The Bates argue the sand defendants have not established they are entitled to summary judgment because they have not shown that SBA is a "sophisticated user." They contend *Damond* is not applicable. A sophisticated user is defined as one who is "familiar with the product," *Hines v. Remington Arms Co., Inc.*, 94-455, p. 10 (La. 12/8/94), 648 So.2d 331, 337, or as one who "possesses more than a general knowledge of the product and how it is used." *Asbestos v. Bordelon, Inc.*, 96-525, p. 44 (La.App. 4 Cir. 10/21/98), 726 So.2d 926, 955. As a result of their familiarity with a product, sophisticated users are presumed to know the dangers presented by the product; hence, there is no duty to warn them. *Hines*, 648 So.2d 331.

The Bates further argue there is a genuine issue of material fact as to whether SBA knew the dangers of sand used for sandblasting. Counsel for the sand defendants point out that as early as 1944 the dangers posed to those who work in silica dust were considered by the United States Supreme Court to be "a matter of common knowledge" that the defendant employer "was bound to know." *Urie v. Thompson*, 337 U.S. 163, 180, 69 S.Ct. 1018, 1029 (1949) (quoting *Sadowski v. Long Island R. Co.*, 292 N.Y. 448, 456-457, 55 N.E.2d 497 (1944)). Additionally, OSHA regulations applicable to shipyards for sand/silica have been in place since 1971. 29 C.F.R. § 1915.3-4. Being a shipyard, SBA is required to comply with applicable OSHA regulations and presumed to know the regulations. *Damond*, 718 So.2d 551. As a result, SBA knew or should have known the danger sand

5

presents when used for sandblasting. *Ducote v. Liberty Mut. Ins. Co.*, 451 So.2d 1211 (La.App. 4 Cir.), *writ denied*, 457 So.2d 15 (La.1984). For these reasons, there is no genuine issue of material fact that SBA is a "sophisticated user" of sand to whom no duty to warn was owed by the sand defendants.

We further find, as the fourth circuit did in *Damond*, that SBA is legally obligated to comply with safety regulations to protect its employees from the dangers presented by sandblasting. *See* La.R.S. 23:13[1]. Likewise, we cannot say it would be practical for the sand defendants to warn SBA's employees of the dangers sand presents when used for sand blasting. Accordingly, we agree with the fourth circuit's conclusion that the sand defendants did not have a duty to warn SBA or Mr. Bates of the danger sand presents when used for sandblasting.

The Bates also urge that *Damond* is not applicable to all of their claims because it applies only to cases that occurred after the effective date of the Louisiana Products Liability Act (LPLA), September 1, 1988. They assert instead that Mr. Bates' employment with SBA began in 1980 and that their claims include pre-LPLA claims and LPLA claims. To the contrary, *Damond* was decided solely on pre-LPLA product liability law outlined by the supreme court in *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110 (1986).

Next, the Bates claim that the Hazard Communication Standard, 29 C.F.R. § 1910.1200 disseminated by the Occupational Safety and Health Administration in

---

[1]La.R.S. 23:13 provides:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees.

November 1983 resulted in a duty being imposed on the sand defendants to notify Mr. Bates and other like employees of SBA of the danger sand presents when it is used for sandblasting. This assertion has no merit. Courts have determined that OSHA is a regulatory provision enforced by fines or criminal prosecutions. It does not create a private right of action. *Fullen v. Philips Elec. N.A. Corp*., 266 F.Supp.2d 471 (N.D. W.V. 2002); *Wickham v. Am. Tokyo Kasei, Inc.,* 927 F.Supp. 293 (N.D. Ill. 1996); *Dukes v. Sirius Const., Inc.*, 73 P.3d 781 (Mont. 2003).

Lastly, the Bates claim summary judgment was improvidently granted because discovery was incomplete. The record shows otherwise, however. Suit was filed February 2009, and Mr. Bates was deposed in May 2009. The sand defendants did not file their motion for summary judgment until December 2010. In their memorandum opposing the motion for summary, the Bates stated the deposition of Specialty Sand Company was being scheduled for January 2011, but the corporate deposition of Southern Silica of Louisiana, Inc. was the subject of a motion to compel. No motion to compel discovery is in the record, and there was no mention of a request for a continuance during the hearing on the motions for summary judgment. For these reasons, we find the Bates have not shown summary judgment was improvidently granted on this basis. *See LeCroy v. Byrd Reg'l Hosp.*, 10-904 (La.App. 3 Cir. 2/2/11), 56 So.3d 1167.

## DISPOSITION

The judgment granting summary judgment in favor of Specialty Sand Company and Southern Silica of Louisiana, Inc. dismissing Wilbert and Edna Bates's claims against them is affirmed. All costs are assessed to Wilbert and Edna Bates.

**AFFIRMED.**