Jorge FERNANDEZ and
Renee Fernandez

v.

TAMKO BUILDING PRODUCTS,
INCORPORATED, et al.

Civil Action No. 12–518–SDD–SCR.

United States District Court,
M.D. Louisiana.

Signed March 7, 2014.

Ruling on Reconsideration in
Part April 11, 2014.

Leonard Cardenas, III, Cardenas Law Firm, Baton Rouge, LA, for Jorge Fernandez and Renee Fernandez.

Joseph Maselli, Jr., Scott H. Mason, Plauche' Maselli Parkerson LLP, New Orleans, LA, William J. Ricci, Lavin, O'Neil, Ricci, Cedrone & Disipio, Philadelphia, PA, for Tamko Building Products, Incorporated, et al.

### RULING

SHELLY D. DICK, District Judge.

This matter is before the Court on the *Motion for Summary Judgment* filed by the Defendant, Tamko Building Products, Incorporated ("Defendant" or "Tamko").[1] Plaintiffs, Jorge Fernandez and Renee Fernandez ("Plaintiffs" or "Plaintiff"[2]), have filed an *Opposition* to the motion.[3] For the reasons which follow, the Court finds that the Defendant's motion should be granted in part and denied in part.

## I. FACTUAL BACKGROUND

Number 15 felt is a saturated felt underlayment used during the roofing process to provide a temporary moisture barrier which protects the wood deck from the elements. Once a roof is completed, the felt provides a secondary moisture barrier which protects the wood deck from moisture that may seep beneath the shingles. After installation, and before the shingles are installed, the felt underlayment is a walking surface used by roofing installers.

Eagle Roofing Company ("Eagle Roofing") was hired to repair the roof of a home that had been damaged by a hail storm. Eagle Roofing subcontracted the roofing job to Edgar Jiminez ("Jiminez"), the direct employer of Plaintiff Jorge Fernandez and Inmar Torres. Eagle Roofing Manager David Mancuso ("Mancuso") allegedly ordered #15 roofing underlayment from Advanced Building Products in Harahan, Louisiana.[4] As Plaintiff, an experienced roofer, scaled the steeply gabled roof upon which he was working, the roofing felt allegedly tore, allegedly causing him to fall and sustain serious injuries.[5]

This Court is called to decide whether the roofing felt provided an unreasonably

---

1. Rec. Doc. No. 68.

2. Plaintiff Renee Fernandez is the wife of Plaintiff Jorge Fernandez. Renee's claim is only for loss of consortium. Where the Court refers to Plaintiff in the singular in this opinion, it is speaking of Jorge Fernandez.

3. Rec. Doc. No. 74.

4. Plaintiff alleges that the #15 roofing underlayment delivered to the residence was "TAMKO #15" as shown on the product's wrapping. The Defendant does not waive its right to contest that the product at issue was actually TAMKO #15. Plaintiff offers various photograph exhibits which depict the rolls of #15 roofing underlayment as delivered to the home of the roofing job. Plaintiff argues that

"TAMKO #15" is clearly seen on the product wrapper in these photographs. Defendant counters that TAMKO manufactures four different kinds of #15 felt, and there is evidence in the record that the supplier who took the order filled it not with TAMKO #15, as alleged by Plaintiff and tested by Plaintiff's experts, but rather TAMKO ASTM #15. The Court acknowledges Defendant's right to contest product identification; however, for the purposes of this motion, the Court will assume *arguendo* that the product at issue was TAMKO #15.

5. Rec. Doc. No. 74–27, pp. 3–4 (Deposition of Jorge Fernandez, pp. 104–105).

dangerous walking surface and whether Tamko, the felt manufacturer, adequately warned of the danger of the felt tearing while being walked upon. Tamko has moved for summary dismissal on the grounds that, because the actual felt involved in this case was discarded, the Plaintiff lacks sufficient evidence that the felt was unreasonably dangerous. On the warning issue, Tamko contends that the risk presented was that of falling, and that although Tamko did not warn of the possibility of the felt tearing under the demand of foot traffic, Tamko did warn of the risk of falling.

The Court declines to summarily dismiss Plaintiff's defective product claim merely because the actual product in question was discarded. The Court finds that the felt in question may be shown to be unreasonably dangerous in construction or composition through the use of an exemplar that is demonstrated to be an accurate surrogate for the original.

As to the warning claim, the Court finds that the risk of harm was that of falling, and Tamko did warn, both in writing and pictorially, of that risk. Thus, the Plaintiffs warning claims will be dismissed.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [6] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." [7] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." [8] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of nonmovant's response." [9]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[10] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[11] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." [12] The Court will

---

**6.** Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996).

**7.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas,* 65 F.3d 467, 469 (5th Cir.1995).

**8.** *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*) (*quoting Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2552).

**9.** *Id.* at 1075.

**10.** *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046–47 (5th Cir.1996).

**11.** *Little,* 37 F.3d at 1075; *Wallace,* 80 F.3d at 1047.

**12.** *Wallace,* 80 F.3d at 1048 (*quoting Little,* 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996).

not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[13] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[14]

### B. The Louisiana Products Liability Act ("LPLA") [15]

■■■ The LPLA contains an exclusive remedy provision limiting a plaintiffs theories of recovery against a manufacturer of an allegedly defective product to those established by the LPLA.[16] "To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else."[17] Under Louisiana law, a product can be unreasonably dangerous in construction or composition; in design; due to an inadequate warning; or because it does not conform to an express warranty of the manufacturer about the product.[18] The plaintiff bears the burden of proving that a product is unreasonably dangerous.[19]

Plaintiff claims the TAMKO # 15 was unreasonably dangerous in its construction or composition, and due to an inadequate warning or failure to warn. The Court turns to a discussion of these claims and the applicable law and jurisprudence.

#### 1. *Unreasonably Dangerous in Construction or Composition*

Plaintiff contends that the TAMKO # 15 installed on this particular job was defective in construction or composition as contemplated by the LPLA.[20] Relying on his experts' testing and testimony, Plaintiff contends that TAMKO # 15 underlayment "should *never* be used on steep sloped roofs ..."[21] Plaintiff further argues that his experts' testing and testimony establish that TAMKO # 15 is not strong enough to withstand the weight of the foot traffic of a roofer weighing 132 pounds (the weight of Plaintiff) on a 10 on 12 steep roof. One of Plaintiff's experts testified that TAMKO # 15 should never be used by roofers on any roof having a 7 on 12 slope or greater.[22]

The Defendant argues that this theory of recovery is not available to the Plaintiff because the allegedly defective product was discarded following the incident. Thus, Defendant contends that "[a]ny claim that the product was 'unreasonably

13. *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir.1995).

14. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

15. La. R.S. 9:2800.51 *et seq.*

16. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir.2002).

17. *Id.*, citing La. R.S. 9:2800.54(A).

18. *See* La. R.S. 9:2800.54(B).

19. *See* La. R.S. 9:2800.55(D).

20. Rec. Doc. No. 74, p. 8.

21. *Id.*, citing Rec. Doc. No. 74–2, p. 14 (Deposition of Jerry L. Householder p. 14)(emphasis in original).

22. With respect to these contentions made by Plaintiffs proffered experts, TAMKO again asserts the argument that these experts may very well have been testing the wrong TAMKO product as set forth previously Rec Doc. No. 75, p. 3.

dangerous' in construction or composition' is incapable of proof."[23] The Defendant also does not concede that the methodology employed by Plaintiff's experts would satisfy the *Daubert* standard.[24]

A plaintiff who contends that a product is unreasonably dangerous in construction or composition must provide evidence that the "characteristic of the product condition that renders it unreasonably dangerous" existed "at the time the product left the control of its manufacturer."[25] Further, "[a] product is unreasonably dangerous in construction or composition if, at the time it left the manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer."[26]

█ Here, it is undisputed that the felt underlayment at issue was removed and discarded following Plaintiff's incident, and it was destroyed before any examination could be made of the product.[27] Thus, Plaintiff's argument that his expert performed laboratory testing of the "specific TAMKO # 15 felt at issue" is not entirely correct.[28] Plaintiff's experts could only have tested other rolls of TAMKO # 15. However, the Court is not willing to find as a matter of law that Plaintiff cannot satisfy his burden of proof by testing and analysis of exemplar rolls of TAMKO # 15. The Court recognizes that the Plaintiff will bear a heavy burden at trial in proving his construction/composition defect claim. The Court also acknowledges the Defendant's right to present evidence that the product which was actually used in this case was not TAMKO # 15. Nevertheless, the Court finds that sufficient material fact issues exist on this issue such that summary judgment is not proper on this claim. The Defendant has not cited any authority for the proposition that a plaintiff may never prove a defective construction/composition claim when the actual product has been discarded but identical versions of the product are available for testing. Accordingly, the Court finds summary judgment is not proper on this claim.[29]

### 2. *Failure to Warn*[30]

Plaintiff also alleges that TAMKO breached its duty to warn under the LPLA

**23.** Rec. Doc. No. 68–1, p. 1, citing La. R.S. 9:2800.54(B).

**24.** *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

**25.** La. R.S. 9:2800.54(C).

**26.** La. R.S. 9:2800.55.

**27.** Rec. Doc. No. 68–5, p. 2 (Deposition of Inmar Torres, p. 65).

**28.** Rec. Doc. No. 74, p. 7.

**29.** Should the Plaintiff be able to present evidence of a defect in construction or composition, the Court notes that the principles of comparative fault would apply to Plaintiffs failure to use the provided fall protection equipment. *See* LSA–C.C. art. 2323; *Broussard v. State ex rel. Office of State Buildings,* 2012–1238 (La.4/5/13), 113 So.3d 175, 189 ("[P]laintiffs 'awareness of the danger' is but one factor to consider when assigning fault to all responsible parties under La. Civ.Code art. 2323")(internal citations omitted).

**30.** Plaintiff attempts an argument that perhaps a warning should have been given in both English and Spanish. The Court will not entertain this argument because: (1) there is no requirement under the LPLA or related jurisprudence that a foreign language warning be given; (2) the warning on the product allegedly at issue contained a pictoral symbol which depicted the risk of falling; and (3) as shall be set forth in detail, the evidence establishes that the given warning was not read or was ignored.

because there was no warning on TAMKO # 15 that it could tear under foot traffic on steep roofs. Plaintiff contends the fall protection recommended in the given warning was inadequate because it would not have prevented the tearing of the # 15 felt that Plaintiff contends was the cause of his fall and subsequent injuries. The Court rejects this proposition and finds that the risk of tearing is not the risk of which a warning is required; rather, falling is the actual risk.

The Defendant contends that the warning provided was sufficient, if heeded, to prevent the injury Plaintiff suffered. The warning on TAMKO # 15 contained an illustration of a stick figure falling from a roof on the # 15 label, accompanied by the words: "APPROPRIATE FALL PROTECTION METHODS SHOULD BE USED WHENEVER WORKING ON ROOFS. Use Caution. Wrapper may be slippery."[31] Plaintiff argues the given warning is "irrelevant" given that Plaintiff used fall protection equipment every day except for the date of the incident.[32] Plaintiff further contends this warning is, in fact, not a warning at all of the actual risk, that Plaintiff argues is the chance of the felt paper tearing on steep slope roofs.

Defendant counters that, if followed, this warning would have prevented exactly the injury that Plaintiff suffered. The Defendant also contends that, based on the admission by Plaintiff and his contractor that neither of them ever read the label which contained the warning, Plaintiff is precluded from recovery under this theory of liability. The record reflects that David Mancuso, the Eagle Roofing Manager who purchased the felt, never looked at the label;[33] Edgar Jiminez, the Eagle Roofing Subcontractor and Plaintiff's employer, never read the label;[34] and Plaintiff recalled seeing the number 15, but nothing else about the label.[35]

■ To maintain a failure to warn claim under the LPLA, "a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic."[36] The manufacturer is liable for an inadequate warning only if the defect proximately caused the plaintiff's injury.[37] The plaintiff bears the burden of proving that "but for" the inadequate warning, the accident in question would not have occurred.[38]

In support of its position, the Defendant relies on *Peart v. Dorel Juvenile Group, Inc.*, a products liability case where the plaintiff had been injured when she fell from a step stool while shelving purses at a department store.[39] The plaintiff sued the manufacturer of the stool under the LPLA, claiming a failure to warn.[40] The label on the stool actually read: "CAUTION KEEP BODY CENTERED BE-

31. Rec. Doc. No. 74–22.

32. Rec. Doc. No. 74, p. 7.

33. Rec. Doc. No. 68–8, Deposition of David Mancuso, p. 22.

34. Rec. Doc. No. 68–7, Deposition of Edgar Jiminez, p. 27.

35. Rec. Doc. No. 68–3, Deposition of Jorge Fernandez, p, 89.

36. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 264 (5th Cir.2002).

37. La. R.S. 9:2800.54(A); *see also, Wheat v. Pfizer*, 31 F.3d 340, 342 (5th Cir.1994).

38. *See Brown v. Parker–Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir.1990).

39. No. 09–7463, 2011 WL 1336563 (E.D.La.4/7/11).

40. *Id.*

TWEEN THE SIDE RAILS. DO NOT OVERREACH. SET ALL FOUR FEET ON FIRM LEVEL SURFACE. WEAR SLIP-RESISTANT SHOES." The label also contained the words: "Light Household Duty Rating Working Load: 200 lbs."[41] The plaintiff had testified in her deposition that she did not read the labels on the stool before using it, and she also testified that she weighed more than 250 pounds at the time of the incident.[42] The record also revealed that the stool had been used in a commercial setting between five and ten years.[43]

The plaintiff claimed that the stool should have warned of the increased risk of collapse with use and age and also provided instructions on how to identify when the stool has reached the end of its usable life, and what to do when that occurs.[44] An engineering expert tested the stool and reported that the plaintiff's weight was not a factor in the accident, but that the stool broke because it "wore out."[45] This expert also expressed the opinion that the stool should have had a warning that stated the step stool can wear out over time, what to look for to make this determination, and what to do if the stool appears worn out.[46]

The court noted that "[f]ailure to warn claims do not necessarily present a jury issue.[47] 'A "mere allegation of inadequacy" is insufficient for a plaintiff to survive summary judgment on a failure-to-warn claim.'[48] The plaintiff must point to specific facts in the record that demonstrate that there is a genuine issue of material fact to defeat summary judgment."[49] Considering the plaintiff's own deposition testimony that she did not read the label and her failure to indicate that she would have liked or needed any more information before using it on the date of the accident, the court held that the plaintiff had not "established that a warning regarding the useful life of the step stool would have caused her to not use it. Also, plaintiff admitted at oral argument that it is obvious that the step stool has a useable life, and that it should be inspected periodically to determine the end of its usable life."[50] Finding that plaintiff failed to show a genuine issue of material fact regarding whether an inadequate warning was the proximate cause of her injury, the court granted summary judgment in favor of the manufacturer.[51] The Fifth Circuit affirmed the ruling of the district court: "In like manner, we hold that the district court did not err in dismissing Peart's claims for failure to give a warning that would not have been read and, consequently, could not have been the 'but for' cause of her injuries."[52]

The Louisiana Fifth Circuit Court of Appeal reached the same conclusion in *Or-*

41. *Id.* at *1.

42. *Id.*

43. *Id.*

44. *Id.* at *2.

45. *Id.*

46. *Id.*

47. *Id.* at *3, citing *Brown*, 919 F.2d at 311 (citing *Anderson v. McNeilab, Inc.*, 831 F.2d 92, 93 (5th Cir.1987)).

48. *Id.*, quoting *Gruver v. Kroger Co.*, 2010–689 (La.App. 3 Cir. 2/2/11), 54 So.3d 1249, 1256 (quoting *Stahl* 283 F.3d at 264–65).

49. *Id.*, citing *Gruver*, 54 So.3d at 1256.

50. *Id.*

51. *Id.*

52. *Peart v. Dorel Juvenile Group, Inc.*, 456 Fed.Appx. 446, 448 (5th Cir.1/4/12).

*tolano v. BDI Marketing,* wherein a plaintiff brought a products liability claim against a drug manufacturer alleging a particular drug caused his heart attack.[53] The plaintiff had read the dosage information and warnings but admitted that he failed to read the entire package label.[54] Further, the plaintiff acknowledged that, despite reading the label's recommended dosage of six tablets in a twenty-four hour time period, he took six tablets within fourteen and a half hours.[55] The trial court found that an abuse of dosage was not a reasonably anticipated use, regardless of the motive in taking the medication.[56] The Fifth Circuit affirmed the trial court's summary judgment ruling in favor of the manufacturer, stating: "These warnings are adequate and have met the standards of the United States Food & Drug Administration. In addition, Ortolano admitted in his deposition that he did not even read the warnings that were present on the packaging."[57]

■ Applying the same reasoning to the facts of this case, it is clear that Plaintiff failed to heed the warning label on the felt paper; thus, Plaintiff has failed to show how the type of warning he contends would have been appropriate (or any other warning at all) would have changed the outcome of the accident since it is unlikely that Plaintiff would have heeded that warning either. There is no reason to believe, based on the summary judgment evidence before the Court, that Plaintiff would have adhered to an alternate warning considering he did not follow the warning provided to wear fall protection. Therefore, the Court finds that Plaintiff has failed to create a genuine issue of material fact regarding the failure to warn claim.

Furthermore, the Court is not persuaded by the suggestion that it was standard industry practice for roofers not to use fall protection equipment. Plaintiff curiously argues, citing the testimony of several of his experts, that "it is a very common and known practice throughout the roofing industry for fall protection not to be used by roofers on residential roofs."[58] This is apparently despite the fact that some of the same experts acknowledge that OSHA regulations require fall protection equipment be utilized when working above six feet.[59] And yet, Plaintiff admits that not only was he provided fall protection equipment for this particular job, but, in fact, "Plaintiff and all of his co-workers had used fall protection throughout the entirety of that job."[60] Plaintiff explains that he did not use fall protection on the date of his fall "[b]ecause the front entry roof was so small and its location relative to the ridgeline of the roof did not provide a tie-off point, there was no practical use of fall protection without destroying the struc-

53. 05–989 (La.App. 5 Cir. 4/25/06), 930 So.2d 192.

54. *Id.* at 193.

55. *Id.*

56. *Id.* at 194.

57. *Id.* at 196.

58. Rec. Doc. No. 74, p. 3, citing Rec. Doc. No. 74–1 (Deposition of Robert Whitcomb, pp. 82–84); Rec. Doc. No. 74–12. p. 1, 74–14, pp. 6–7 (Deposition of Patrick Heil, pp. 27, 62–63); Rec. Doc. No. 74–3, pp. 5–6 (Deposition of Householder, pp. 35–36); Rec. Doc. No. 74–18, pp. 2–3, 9–10 (Deposition of Wendell Rust, pp. 46–47, 71–72); Rec. Doc. No. 74–17, p. 7 (Deposition of Mancuso, p. 60).

59. *See* Rec. Doc. No. 74–3, pp. 5–6 (Deposition of Householder, pp. 35–36).

60. Rec. Doc. No. 74, p. 5, citing Rec. Doc. No. 74–26, pp. 7–8 (Deposition of Torres, pp. 41–42); Rec. Doc. No. 74–1 (Deposition of Whitcomb, p. 81).

ture of the house." [61] However, Plaintiff concedes that one expert testified that a manlift could have been used on this portion of the roof,[62] but then disposes of this safety measure as "cost prohibitive" and "hard to work from." [63] Furthermore, as the Defendant noted, one of Plaintiffs experts identified an alternative safety option, and a defense expert actually identified five viable safety alternatives which would have prevented Plaintiff's fall.[64] Essentially, Plaintiff would have this Court not only disregard, but in fact reward, his own negligence.

Considering that Plaintiff ignored the warning label on TAMKO # 15, the Court finds that Plaintiff cannot prove that the failure to warn or an inadequate warning was the proximate cause of his injuries as required under the LPLA. The heeding presumption has been rebutted by the Defendant. Moreover, the Court is not persuaded by the argument that the risk was the tearing of the paper rather than falling from the roof. Clearly, had Plaintiff heeded the warning on TAMKO # 15 and utilized fall protection equipment or other safety options that were available, his fall and subsequent injury would not have occurred.

### 3. *No Duty to Warn Sophisticated User*

The Defendant also contends that, although it actually did warn of the danger of falling, it had no duty to warn this particular Plaintiff under the LPLA and applicable jurisprudence. Defendant argues that TAMKO # 15 is not a product intended for ordinary use by the general public; rather, its ordinary user is a professional roofer. Defendant further contends that both Plaintiff and his employer Jiminez described themselves as professional roofers,[65] and Defendant argues they should be well aware of the strength and characteristics of TAMKO # 15, TAMKO # 30, or any other felt paper product. Likewise, Mr. Mancuso, who chose and purchased the product as Regional Sales Manager for Eagle Roofing, is a sophisticated user and purchaser. Thus, as sophisticated users of the product, the Defendant contends it had no duty to warn any of the purchasers or subsequent users of this product.

 A manufacturer has a lessened duty to warn of danger when the danger is obvious. This duty is further lessened when the user is sophisticated.[66] Under Louisiana law, a manufacturer has no duty to warn a sophisticated user.[67] The LPLA provides that: "A manufacturer is not required to provide an adequate warning about his product when ... [t]he user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such

---

**61.** Rec. Doc. No. 74, p. 6.

**62.** Rec. Doc. No. 74, p. 6; *See* Rec. Doc. No. 74-11, p. 7 (Deposition of Heil, p. 20).

**63.** *Id.*

**64.** Rec. Doc. No. 75, p. 5, citing Rec. Doc. No. 74-3, pp. 6-7 (Deposition of Householder, pp. 36-37); Rec. Doc. No. 75-4, p. 19 (Report of Wendell Rust, OSHA Consultant, p. 18).

**65.** *See* Rec. Doc. No. 68-3, p. 5 (Deposition of Jorge Fernandez, p. 27, lines 1-3)

**66.** *Savant v. Beretta USA Corp.*, No. 05–1501, 2007 WL 1068481 (W.D.La.4/4/07) (citing *Johnston v. Hartford*, 623 So.2d 35, 37 (La. App. 1st Cir.1993); *Ducote v. Liberty Mutual Ins. Co.*, 451 So.2d 1211, 1213 (La.App. 4th Cir.1984); *Duncan v. Louisiana Power & Light Co.*, 532 So.2d 968, 972 (La.App. 5th Cir.1988)).

**67.** *Davis v. Avondale Industries, Inc.*, 975 F.2d 169, 172 (5th Cir.1992).

characteristic."[68] "Similarly, a manufacturer has no duty to warn a sophisticated *purchaser*.[69] 'Louisiana does not hold [that] a manufacturer is compelled to warn sophisticated purchasers of dangers of which the buyer either knows or should be aware.'"[70] Furthermore, "manufacturers have no duty to warn an end-user of a product's dangers when the product is initially purchased by a sophisticated user that would have the duty to warn the end-user."[71]

In *Contranchis v. Travelers Insurance Company*, the Fifth Circuit addressed a case involving a construction worker who filed a product liability action against Hercules Sheet Metal, Inc. and its insurer.[72] The plaintiff had allegedly sustained injuries when he fell through a pre-cut hole in sheet metal that was being used on a building under construction. The plaintiff claimed that Hercules had failed to warn about a "slippery substance" on the metal it provided for the project that he claimed caused the accident.[73] The plaintiff also argued that because Hercules had knowledge pertaining to the 18 foot height requirement in the building specifications, it had a duty to advise the erectors of the building of the hazards of walking on the building at "high heights" and a duty to advise the erectors about the hazard of construction at heights, safety procedures on construction at heights, as well as safety instructions on the installation of skylights.[74]

The defendants moved for summary judgment asserting that "an open skylight hole in a construction project was an 'obvious danger' for which Hercules did not have a duty to warn."[75] The defendants also argued that both the plaintiff and his employer A–1 Steel Erectors were sophisticated users of sheet metal based on their specialized business of erecting metal buildings; thus, there was no duty to warn.[76] The trial court granted summary judgment in favor of the defendants, and the plaintiff appealed.

The Fifth Circuit affirmed the trial court, stating: "As Hercules points out, Louisiana courts have previously noted that such construction work [erecting metal buildings] is specialized per se."[77] The court also stated: "[T]he trial court concluded that, as an entity engaged in the specialty business constructing metal buildings, A–1 [plaintiff's employer] was a

68. *Id.* quoting La. R.S. 9:2800.57(B)(2); *see also Duncan v. Louisiana Power & Light Co.*, 532 So.2d 968, 972 (La.App. 5th Cir.1988) ("There is no duty to warn a sophisticated user of dangers of which he may be presumed to know through his familiarity with the product."); *Gautreaux v. Tex–Steam Co.*, 723 F.Supp. 1181, 1182 (E.D.La.1989).

69. *Id.* (emphasis in original).

70. *Id.*, quoting *Bradco Oil & Gas Co. v. Youngstown Sheet & Tube Co.*, 532 F.2d 501, 504 (5th Cir.1976) *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1111, 51 L.Ed.2d 542 (1977).

71. *Guillot v. Aventis Pasteur, Inc.*, No. 02–3373, 2013 WL 4508003, at *17 (E.D.La.8/22/13) (citing *Longo v. E.I. Dupont De Nemours & Co.*, 632 So.2d 1193 (La.Ct. App.1994); *Scallan v. Duriron Co., Inc.*, 11 F.3d 1249 (5th Cir.1994); *Washington v. Dep't of Transp.*, 8 F.3d 296 (5th Cir.1993); *Davis v. Avondale Indus., Inc.*, 975 F.2d 169 (5th Cir. 1992); *Bates v. E.D. Bullard Co.*, 76 So.3d 111 (La.Ct.App.2011)).

72. 02–840 (La.App. 5 Cir. 1/28/03), 839 So.3d 301.

73. *Id.* at 302

74. *Id.*

75. *Id.*

76. *Id.*

77. *Id.* at 304, citing *Chauvin v. Gulf Coast Minerals, Inc.*, 509 So.2d 622 (La.App. 3 Cir. 1987); *writ denied*, 512 So.2d 1175 (La.1987).

sophisticated user of sheet metal and had prior knowledge of applicable safety procedures. We find no error in this conclusion of the trial court. We further find no error on the part of the trial court in its determination that there was no issue of material fact that Hercules had no duty to warn A–1 and its employee, Contranchis, regarding the dangers of working with metal at heights of 18 feet or of the installation of skylights." [78]

In *Hines v. Remington Arms Co., Inc.,* the Louisiana Supreme Court addressed a claim against a gunpowder manufacturer for injuries sustained by a plaintiff when a high-powered target rifle accidentally discharged into a container of gunpowder and ignited it.[79] Finding the plaintiff to be a sophisticated user, the *Hines* court opined that a sophisticated user is one who is "familiar with the product." [80] As a result of their familiarity with a product, sophisticated users are presumed to know the dangers presented by the product; thus, there is no duty to warn them.[81]

■■ Applying the applicable law and jurisprudence to the facts of this case, the Court finds that there is no genuine issue of material fact that, based on their professional experience and use of the product, the Plaintiff, Jiminez, and Mancuso are sophisticated users. Thus, although the Defendant actually did warn of the danger of falling, it had no legal duty to warn Plaintiff of the known or knowable dangers and/or characteristics of # 15 felt paper.

Plaintiff contends that the sophisticated user defense does not apply because TAM-KO # 15 is available to the general public in Lowe's and similar stores. This argu-ment is without merit and contrary to relevant caselaw. The jurisprudence is clear that it is not the product's availability to the user, but rather the user's familiarity with the product, that makes a user "sophisticated." For example, in *Colbert v. Sonic Restaurants, Inc.,* the court held that the plaintiff, who had been burned by hot coffee, was a sophisticated user of Sonic's coffee.[82] Based on the plaintiffs admissions in his deposition that he is a regular coffee consumer and often purchased coffee from Sonic prior to the incident causing his alleged injury, the court concluded that the plaintiff "was a sophisticated user of Sonic's coffee (and coffee in general) and, in light of his experience and common sense knowledge, he should have known of the dangers inherent in drinking hot coffee." [83]

The record reflects that Mancuso, Jiminez, and Plaintiff are all regular users of # 15 felt paper, and based on their roofing experience, should be well aware of the inherent characteristics and dangers in such a product. The fact that fall protection equipment was used every day on the job in question prior to the date of Plaintiff's injury is indicative of their knowledge of the risk of falling from the roof. Likewise, the fact that all three are aware that # 15 felt is regularly cut with a shearing knife in its use in roofing shows that they were aware, or should have been aware, that at some point with the application of force, felt paper will "give." As the Defendant aptly stated, "[T]he relative strengths of the two products, measured by their resistance to a shearing force, is something every experienced roofer would know. Both products are reduced to a usable size

78. *Id.*

79. 94–455, p. 10, (La.12/8/94), 648 So.2d 331.

80. *Id.* at 337.

81. *Id.*

82. 741 F.Supp.2d 764, 771 (W.D.La.2010).

83. *Id.*

by subjecting them to a shearing force. They are cut with a knife blade." [84]

Therefore, the Court alternatively finds that the Defendant owed Plaintiff no duty to warn with this product because the Plaintiff, Jiminez, and Mancuso were all sophisticated users of #15 felt paper. Even if the Plaintiff was not a sophisticated user, the caselaw discussed above shows that a "manufacturer does not have a duty to warn an end-user when the product is initially purchased by a sophisticated user that would then have the duty to warn the end-user." [85] The Defendant is entitled to summary judgment on all warning claims.

## III. CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment* by Defendant Tamko Building Products, Incorporated, is hereby GRANTED in part and DENIED in part. [86]

IT IS SO ORDERED.

### *RULING*

This matter is before the Court on the *Motions for Reconsideration* filed by Plaintiffs, Jorge and Renee Fernandez [1] and Defendant Tamko Building Products [2] on the Court's *Ruling*, [3] which granted in part and denied in part the Defendant's *Motion for Summary Judgment*. Both parties have opposed the respective motions. [4]

## I. HISTORY AND PROCEDURAL BACKGROUND

The procedural posture and history of this matter merits discussion. In Plaintiffs' original *Complaint*, they asserted claims under three theories of recovery available under the LPLA, namely, failure to warn, defective design, and defect in composition or construction. At the summary judgment stage, Plaintiffs put most of their eggs in the "failure to warn" basket and the Defendant did likewise.

On summary judgment, Plaintiffs gave short shrift to their design claim. Plaintiffs never identified or discussed any alternative design, a necessary element, [5] and otherwise failed to brief the elements of a *prima facie* case for a design defect under the LPLA. [6] Defendant TAMKO correctly

84. Rec. Doc. No. 68–1, p. 6.

85. *Supra*, n. 74.

86. Rec. Doc. No. 68.

1. Rec. Doc. No. 112.

2. Rec. Doc. No. 115.

3. Rec. Doc. No. 107.

4. Rec. Doc. Nos. 130 & 138.

5. La. R.S. 9:2800.56. To establish a design defect under the LPLA, a plaintiff must show that at the time the product left the manufacturer's control, (1) "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage," and (2) "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." *Milton v. Rapiscan Sec. Prod.*, No. 04–591, 2005 WL 1400433, at *2 (E.D.La. June 6, 2005) (citing *Krummel v. Bombardier*, 206 F.3d 548, 551 (5th Cir.2000); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990)).

6. A plaintiff is required to "identify a specific alternative design in existence at the time of the injury that was capable of preventing the injury, and they must also perform a risk-utility analysis." *Milton v. Rapiscan Sec. Prod.*, No. 04–591, 2005 WL 1400433, at *2 (E.D.La. June 6, 2005) (citing *Krummel*, 206 F.3d at 551). Additionally, "[t]he alternative design proposed must be reasonably specific and not based on mere speculation." *Seither v. Winnebago Industries, Inc.*, 2002–2091, (La. App. 4 Cir. 7/2/03), 853 So.2d 37, 41.

pointed out that "plaintiffs have given little indication they intend to pursue [a design] claim. With the deadline for expert witness disclosures having passed, not one of plaintiffs' experts has identified a design defect."[7] Thus, the Court deemed the Plaintiffs' defective design claim waived.

As for the Plaintiffs' construction or composition defect claim, the parties' briefs on the summary judgment motion were barely adequate. The sum and substance of TAMKO's *Motion for Summary Judgment* on the Plaintiffs composition and construction claim was that:

> With the product at the center of this dispute no longer available, plaintiff's right to recovery is all but eliminated. Any claim that the product was "unreasonably dangerous in construction or composition" is incapable of proof. La. R.S. 9:2800.54(B).[8]

Defendant moved for dismissal of the Plaintiffs' construction or composition claim on the sole grounds that the actual roofing felt in place when the Plaintiff fell had been discarded.[9] The Defendant argued that the construction or composition theory of recovery was not available to the Plaintiff, as a matter of law, because the allegedly defective product was discarded following the accident. Defendant failed to provide authority for the legal proposition that a plaintiff may never prove a defective construction/composition claim when the actual product has been discard-ed but identical versions of the product are available for testing. Accordingly, the Court declined to find, as a matter of law, that Plaintiff could not satisfy his burden of proof by testing and analysis of exemplar rolls of TAMKO # 15. In the absence of argument that the record evidence was insufficient to carry Plaintiffs' burden of proof of a construction/composition claim, the Court denied summary judgment finding that the mere destruction of the actual product did not foreclose Plaintiffs' possible recovery. On *Motion for Reconsideration*, Defendant puts meat on the bones of the argument that the record establishes that Plaintiffs cannot carry their burden of proof on a construction or composition defect claim.

The Court granted summary dismissal of the Plaintiffs' failure to warn claim. The Plaintiffs move for reconsideration.

## II. LAW & ANALYSIS

### A. Motion for Reconsideration

The *Motion for Reconsideration* was filed within 28 days of the relevant ruling; thus, it is evaluated pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. "A Rule 59(e) motion calls into question the correctness of a judgment."[10] However, a Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[11] Rather, a motion for reconsider-

---

**7.** Rec. Doc. No. 68–1, p. 1. In response, Plaintiffs provided only conclusory unsupported arguments of defective design. Plaintiffs argued that the TAMKO product was defective because it was unreasonably dangerous when used on steep roofs. (Rec. Doc. No. 74, p. 7) Plaintiffs relied on their experts' opinion that "TAMKO # 15 roofing underlayment should *never* be used on steep sloped roofs, particularly absent the necessary warning of the dangers presented to roofing installers if it is used in such a dangerous application". (Rec. Doc. No. 74, p. 8, citing Householder Deposition p. 14).

**8.** Rec. Doc. No. 68–1, p. 1.

**9.** *Id.*

**10.** *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir.2004) (citation and quotations omitted).

**11.** *Id.* at 479.

ation is for the purpose of correcting "manifest errors of law or fact or to present newly discovered evidence." [12]

### B. Plaintiffs' *Motion for Reconsideration*

Plaintiffs make various assertions of error by the Court in its previous *Ruling*. As several of Plaintiffs' arguments are essentially the same arguments presented to the Court in opposition to the *Motion for Summary Judgment*, the Court will not engage in "rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." [13] The Court will, however, make the following observations.

Plaintiffs take umbrage with the Court's reference to a "heavy burden" regarding the construction and composition defect claim. In denying the Defendant's summary judgment on the construction or composition claim, the Court held that the Plaintiffs could perhaps prove a defect in construction or composition by evidence adduced from testing exemplars. The Court did not change the burden of proof in this case as Plaintiffs suggest. Rather, the Court was merely observing that proving that the subject felt was "defective due to a mistake in the manufacturing process" [14] may be difficult by means of exemplar.

Urging reconsideration of the Court's dismissal of the failure to warn claim,

Plaintiffs suggest that summary judgment is never proper in a product liability case. The wealth of jurisprudence to the contrary, as well as the multitude of cases cited by the Court in its *Ruling*, belie this contention. The Court granted summary judgment dismissing the Plaintiffs' failure to warn claims on two grounds; 1) insufficient evidence that "but for" the allegedly inadequate warning, the accident in question would not have occurred, [15] and 2) no duty to warn a sophisticated user.

It is undisputed that the subject TAM-KO # 15 felt contained a warning that "APPROPRIATE FALL PROTECTION METHODS SHOULD BE USED WHENEVER WORKING ON ROOFS." [16] It is undisputed that the Plaintiff never read the label which contained the warning. [17] Plaintiff argues that the warning, which he concedes he did not read, should have warned that the subject felt could tear under foot traffic on a steep roof. However, in light of the established fact that the Plaintiff did not read the warning provided, the Plaintiff cannot establish that "but for" the allegedly inadequate warning, the accident in question would not have occurred. [18] Plaintiffs argue that the matter of proximate cause is not to be decided by the Court, but is a question for the jury. The Court would simply point to the cases it relied on in the *Ruling* as clear holdings to the contrary. [19]

---

12. *Id.* (citations and quotations omitted).

13. The Court has considered all of Plaintiffs' contentions whether or not specifically addressed herein.

14. *Id.*, quoting *Stahl*, 283 F.3d at 263 (citing La. R.S. § 9:2800.55)(emphasis added).

15. *See Brown v. Parker–Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir.1990).

16. Rec. Doc. No. 74–22.

17. Rec. Doc. No. 68–3, Deposition of Jorge Fernandez, p. 89.

18. *See Brown v. Parker–Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir.1990).

19. *See Peart v. Dorel Juvenile Group, Inc.*, No. 09–7463, 2011 WL 1336563 (E.D.La. April 7, 2011); *Ortolano v. BDI Marketing*, 05–989 (La.App. 5 Cir. 4/25/06), 930 So.2d 192.

Plaintiffs contend the Court's determination of the actual risk involved in this case, determined by the Court to be the risk of falling, was a matter for the jury. However, in *Stahl v. Novartis Pharmaceuticals Corp.,* the Fifth Circuit noted that "[t]his court has determined that 'obviousness' [of the risk] can be appropriately evaluated as a matter of law in a summary judgment proceeding." [20] Likewise, in *Krummel v. Bombardier Corp.,* the Fifth Circuit stated on review of a district court ruling in an LPLA case, "[a] court must first determine what risk, if any, the product created." [21] Regardless of how this Court defined the risk that caused the Plaintiff's injury, in light of his admission that he did not read the warning, the Plaintiff lacks evidence of a necessary element of his warning claim, namely that "but for" the lack of adequate warning, he would not have fallen.

In any event, the Plaintiff was, as a matter of fact, a sophisticated user. Both the Plaintiff and his employer described themselves as professional roofers.[22] Likewise, Mr. Mancuso, Regional Sales Manager for Eagle Roofing, who chose and purchased the subject felt was, as a matter of established fact, is a sophisticated user and purchaser.[23] "[M]anufacturers have no duty to warn an end-user of a product's dangers when the product is initially purchased by a sophisticated user that would have the duty to warn the end-user." [24] Finally, the Plaintiffs' contention that the "sophisticated user" exception is a question for the jury is contradicted by the cases on which the Court relied.[25]

For the first time in their *Motion for Reconsideration,* Plaintiffs argue that the doctrine of *res ipsa loquitur* applies in this case. The Court notes that nowhere in Plaintiffs' *Opposition* did they argue the doctrine of *res ipsa loquitur,* and the Court does not consider the issue to be appropriately before the Court.[26] However, even if this theory had been offered, Plaintiffs have neither satisfied nor argued the elements of that burden in this case. *Res ipsa loquitur* **only** applies "where direct evidence of defendant's negligence is not available to assist the plaintiff to present a prima facie case of negligence." [27] "In order to apply *res ipsa loquitur* three criteria must first be satisfied: (1) the

**20.** 283 F.3d 254, 268 n. 8 (5th Cir.2002) (citing *Scallan v. Duriron,* 11 F.3d 1249, 1252 (5th Cir.1994)).

**21.** 206 F.3d 548, 551 (5th Cir.2000).

**22.** *See* Rec. Doc. No. 68–3, p. 5 (Deposition of Jorge Fernandez, p. 27, lines 1–3).

**23.** Rec. Doc. No. 68–8.

**24.** *Guillot v. Aventis Pasteur, Inc.,* No. 02–3373, 2013 WL 4508003, at *17 (E.D.La.8/22/13) (citing *Longo v. E.I. Dupont De Nemours & Co.,* 632 So.2d 1193 (La.Ct. App.1994); *Scallan v. Duriron Co., Inc.,* 11 F.3d 1249 (5th Cir.1994); *Washington v. Dep't of Transp.,* 8 F.3d 296 (5th Cir.1993); *Davis v. Avondale Indus., Inc.,* 975 F.2d 169 (5th Cir. 1992); *Bates v. E.D. Bullard Co.,* 76 So.3d 111 (La.Ct.App.2011)).

**25.** *See Contranchis v. Travelers Insurance Co.,* 02–840 (La App. 5 Cir. 1/28/03), 839 So.2d 301 (appellate court affirmed the **determination of the trial court** that plaintiff was a sophisticated user); *Bates v. E.D. Bullard Company,* 2011–187 (La.App. 3 Cir. 10/5/11), 76 So.3d 111 (appellate court affirmed trial court's application of the sophisticated user defense and rejected plaintiff's argument that there was an issue of fact on this issue).

**26.** *See Bustamente v. U.S. Dept. of Veterans Affairs,* No. 03–31160, 107 Fed.Appx. 426, 427, citing *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir.1994).

**27.** *Shuff v. Brookshire Grocery Company,* 45,-109 (La.App. 2 Cir. 3/3/10), 32 So.3d 1030, citing *Linnear v. CenterPoint Energy Entex/Reliant Energy,* 06–3030 (La.9/5/07), 966 So.2d 36.

injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant's duty to the plaintiff."[28] Furthermore, the Louisiana Supreme Court has held that "use of the doctrine of *res ipsa loquitur* in a negligence case, as in any case involving circumstantial negligence, does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery."[29] Moreover, the Louisiana Supreme Court has emphasized "that the doctrine of *res ipsa loquitur* is to be used 'sparingly' in products liability cases, and 'only when the plaintiff has excluded other "reasonable explanations" for an accident.'"[30] For the first time in this litigation and raised in support of their *Motion for Reconsideration*, Plaintiffs simply cite to various cases applying the doctrine, then argue its applicability here for the same reasons. Plaintiffs have failed to establish any of the three elements listed above to apply the *res ipsa loquitur* doctrine to their case.

The Court also finds that the *Ruling* on Plaintiffs' warning claims is fully supported by the analysis, reasoning, and supporting jurisprudence set forth therein. Accordingly, Plaintiffs' *Motion for Reconsideration*[31] is DENIED.

### C. Defendant's *Motion for Reconsideration*

■ The Defendant has also moved for reconsideration of the Court's *Ruling* denying summary judgment on Plaintiffs' construction and composition defect claim. The Defendant contends that there is no evidence to support this claim, and summary judgment should be granted on this claim after reconsideration. The Defendant contends that Plaintiffs cannot carry their burden of proof on the construction and composition defect claim because none of Plaintiffs' liability experts conducted any tests in which they compared exemplars of TAMKO # 15 felt with other samples of the same product. Further, Defendant contends neither expert rendered any opinion that exemplars of TAMKO # 15 deviated from TAMKO's specifications or performance standards for that product. While Plaintiffs' expert, Dr. Jerry Householder, did test a sample of TAMKO # 15 to determine the "tensile strength," his report is void of any indication that he compared this sample to any other samples of # 15 felt or that the sample tested deviated from TAMKO's specifications or performance standards for # 15 felt. Likewise, Patrick Heil's report is void of any reference to conducting tests of exemplars of TAMKO # 15 felt.

Plaintiffs oppose this motion, reiterating their opposition to the Court's reference to their "heavy" burden at trial for the construction and composition defect claim. Plaintiffs also re-urge the doctrine of *res ipsa loquitur* as set forth in their own *Motion for Reconsideration*. As the Court has addressed these issues above, it will not repeat its findings here. Finally, Plaintiffs argue their experts could not have concluded that tested samples of

---

**28.** *Id.*, citing *Linnear*, 966 So.2d at 36.

**29.** *Cangelosi v. Our Lady of the Lake Regional Medical Center*, 564 So.2d 654, 666 (La.1989) (emphasis added).

**30.** *Lawson v. Mitsubishi Motor Sales of America, Inc.*, 2005–0257 (La.9/6/06), 938 So.2d 35, 45.

**31.** Rec. Doc. No. 112.

TAMKO # 15 deviated from TAMKO's performance standards or specifications because no such standards or specifications exist.

To prevail on a construction or composition defect claim under the LPLA, "a plaintiff must show that 'at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.' "[32] "In other words, a plaintiff must prove that a product 'is defective due to a mistake in the manufacturing process.' "[33] Furthermore, "[t]o make this showing, a plaintiff 'must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it "unreasonably dangerous." ' "[34] The Plaintiff may not defeat summary judgment by merely professing that no performance standards or product specifications exist. Plaintiffs fail to point to any evidence in the record that TAMKO has no performance standards or product specifications for its # 15 felt. This burden is clearly on the plaintiff in a Louisiana products liability case. La. R.S. 9:2800.55 requires proof that:

> the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products

manufactured by the same manufacturer.

Plaintiffs fail to point to any record evidence that the exemplar felt failed to conform to the manufacturer's performance standards or specifications. Assuming *arguendo* that TAMKO had no manufacturing specifications or performance standards for its # 15 felt, the *Abrogast v. Timex Corp.*,[35] case indicates that, at the very least, Plaintiffs should come forward with evidence of applicable industry or regulatory standards, to which the product failed to conform.

In *Abrogast v. Timex Corp.*, the district court granted summary judgment on plaintiff's LPLA construction or composition defect claim, where plaintiff argued that the Timex watch he purchased contained dangerous levels of hexavalent chromium which caused plaintiff's severe skin reaction.[36] The court granted summary judgment on this claim because it found that plaintiff's expert "fail[ed] to state what the applicable industrial and regulatory standards are, what the manufacturing specifications of Timex are, what he expects the manufacturing specifications of Timex to be, or whether the watchband actually deviates from the manufacturing specifications of Timex."[37] The court further stated that, "[t]he conclusory affidavits of Plaintiff's experts are simply insufficient to demonstrate the existence of a genuine issue of material fact as to whether the watchband is unreasonably dangerous in construction or composition."[38]

---

**32.** *Abrogast v. Timex Corp.*, No. 05–2076, 2010 WL 148288, *5 (W.D.La. Jan. 12, 2010) (quoting La. R.S. § 9:2800.55).

**33.** *Id.*, quoting *Stahl*, 283 F.3d at 263 (citing La. R.S. § 9:2800.55) (emphasis added).

**34.** *Moore v. BASF Corporation*, No. 11–1001, 2012 WL 6025917, *3 (E.D.La. Dec. 4, 2012) (quoting *Welch v. Technotrim, Inc.*, 34,355

(La.App. 2 Cir. 1/24/01), 778 So.2d 728, 733) (emphasis added).

**35.** Note 32, *supra*.

**36.** *Abrogast*, 2010 WL 148288, at *5.

**37.** *Id.* at * 6.

**38.** *Id.*, citing *Grenier v. Med. Engineering Corp.*, 99 F.Supp.2d 759, 764 (W.D.La.2000),

Similarly, in *Moore v. BASF Corporation*,[39] plaintiffs alleged claims under the LPLA due to alleged benzene exposure from plaintiff's work as a painter for several years. Plaintiffs sued various companies alleged to manufacture benzene-containing products. On summary judgment, defendant International Paint argued plaintiffs failed to carry their burden on their construction/composition defect claim.[40] The court noted that, to set forth a claim for a construction/composition defect, "a plaintiff 'must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it "unreasonably dangerous." ' "[41] In particular, the court noted that plaintiffs' expert "did not purport to test the particular paint products" that were used.[42] Thus, the court found that: "[p]laintiffs have put forth no additional evidence demonstrating that the products that Mr. Moore encountered deviated from specifications or performance standards or that plaintiffs even have custody of the paint in question so that tests may be conducted. Therefore, plaintiffs have failed to put forth evidence that International Paint's products were unrea-sonably dangerous in their construction or composition."[43] Importantly, the court noted, "[b]ecause plaintiffs bear the burden of proof on their LPLA claims at trial, defendant has satisfied its burden on summary judgment by pointing out that the evidence in the record contains insufficient proof of an essential element of plaintiffs' composition claim."[44]

After reconsideration, the Court finds that the record in this case warrants the same result. Despite Plaintiffs' protestations that "none exist," it is the Plaintiffs' burden, as set forth in the jurisprudence discussed and cited above, to produce either company specifications and performance standards or at least industry standards and show how the product deviated therefrom. While the Court did previously hold that this claim survived summary judgment because of the possibility to test and compare exemplar products in an effort to make this showing, it is now clear to the Court that no such comparison/tests have been performed. Furthermore, the law is clear that a composition defect is not to be inferred simply because the product tore: "Defects are not presumed [to be present] by the mere happening of an accident."[45] The doctrine of *res ipsa loquitur*

*aff'd*, 243 F.3d 200 (wherein the district court dismissed the plaintiff's claim for a construction defect **because plaintiffs failed to submit any evidence indicating what the manufacturer's standards were or whether the product deviated from those standards.**)(emphasis added).

**39.** No. 11–1001, 2012 WL 6025917 (E.D.La. Dec. 4, 2012).

**40.** *Id.* at *2.

**41.** *Id.*, quoting *Welch*, 778 So.2d at 733.

**42.** *Id.* at *3.

**43.** *Id.* (See, *e.g.*, *Lacoste v. Pilgrim Int'l*, No. 07–2904, 2009 WL 126847 (E.D.La. Jan. 15, 2009) (granting summary judgment since plaintiffs did not put forth evidence of defendant's manufacturing specifications or demonstrate how the product in question materially deviated from such standards); *Gray v. Indus. Plant Maint.*, No. 01–1167, 2004 WL 1661209 (E.D.La. July 23, 2004) (plaintiff did not have custody of tractor that allegedly injured him and so could not demonstrate how it deviated from the manufacturer's standards); *see also Ortolano*, 930 So.2d at 195 ("[Plaintiff] has provided no evidence that this medication deviated from the manufacturer's specifications...")).

**44.** *Id.* (emphasis added).

**45.** *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1364 (La.1992); *see also Grenier*, 243 F.3d at 205 ("Louisiana law does not allow a fact

is unavailable to the Plaintiffs for the reasons set forth above. The Court must find, after careful reconsideration of the record, that there is simply insufficient evidence which would enable Plaintiffs to carry their burden on the construction/composition defect claim.

## III. CONCLUSION

Accordingly, Defendant's *Motion for Reconsideration*[46] is GRANTED, and Defendant's *Motion for Summary Judgment*[47] on Plaintiffs' construction/composition defect claim, which was the only remaining claim before the Court, is hereby GRANTED. The trial set for May 5, 2014, is hereby cancelled. All pending motions are denied as moot.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

---

finder to presume an unreasonably dangerous design solely from the fact that injury occurred.").

